No. 14970

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

ERNEST BLACKBIRD, a/k/a
ERNEST COURCHANE,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade,
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Lawrence Anderson argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Allen Chronister argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana

Submitted: March 25, 1980

Decided: APR 18 1980

Filed: APR 18 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal arising out of defendant's conviction of the crime of bail-jumping pursuant to section 45-7-308, MCA. Trial was had in the District Court of the Eighth Judicial District, in and for the County of Cascade.

Defendant was originally charged by information with the crimes of burglary, aggravated burglary, attempted burglary, and sexual intercourse without consent. After pleading not guilty to the crimes, defendant was released on his own recognizance under the condition that he appear for trial on November 13, 1978, at 9:30 a.m. Defendant, however, failed to appear for trial on the date and hour scheduled. Defendant was then charged on November 13, 1978, with the crime of bail-jumping, a felony, pursuant to section 45-7-308, MCA. According to that statute, a person commits bail-jumping if he is set free by court order on the condition that he will subsequently appear at a specified time and place and then purposely fails without lawful excuse to appear at that time and place.

Defendant entered a plea of not guilty to the charge, and a jury trial was set for March 12, 1979. At trial, defendant argued as one of his defenses, that it was not his purpose or conscious object to fail to appear for the trial. The State attempted to rebut this defense with a jury instruction and the testimony of Barbara Gregovich and Daniel Donovan. Ms. Gregovich, a deputy clerk for the Cascade County Clerk's office, testified that she had heard defendant state in a court proceeding with respect to the date set for trial that, "I have to be there Monday at 9:30."

Donovan, who was defendant's attorney on the original charges, testified that he had made certain statements to the court on November 13, 1978, about defendant's lateness in appearing for trial. Those statements related to a conversation Donovan had with defendant that morning. Donovan testified:

> "I told the judge I had received a phone call at approximately ten minutes to nine that morning from Mr. Blackbird, and he had asked me, I believe, when the trial was. I told him it was at 9:30 and he'd better be there, and I don't know—I can't remember the exact response, but I got the impression that he would try to show up for trial. And the reason I told this to the Judge was I wanted the Judge to wait an additional period of time before the Judge was going to issue a warrant for his arrest and put him back in jail."

Prior to the trial, the prosecution and defense counsel entered into an agreement captioned "Discovery." The agreement provided that the prosecution would produce for defendant, without the necessity of a court order, all materials that were discoverable. The agreement then listed materials which had been supplied as of the date of the document. Among the items, Item No. 3 indicated that no verbal or written statements of defendant had been furnished. Defendant contends that the agreement was, in effect, a stipulation entered into between him and the prosecution that the State would not use any verbal or written statements of defendant at trial. In line with this contention, defendant objected in particular to the testimony of Ms. Gregovich and claimed surprise. However, after granting defense counsel a continuance and an opportunity to interview Ms. Gregovich, the trial court admitted the testimony.

Finally the State submitted an instruction to the court which imputed Donovan's knowledge of the trial date to defendant. Over objection of defense counsel, the court gave the instruction which stated:

-3-

"Notice to attorney is notice to client employing him, and knowledge of attorney is knowledge of his client."

The jury found defendant guilty of the crime of bail-jumping and, on May 7, 1979, defendant was sentenced to ten years in the Montana State Prison at Deer Lodge, Montana.

Three issues are raised for our consideration upon appeal:

(1) Whether the trial court erred in admitting the testimony of Barbara Gregovich in view of the requirements of section 46-15-303, MCA.

(2) Whether the trial court erred in allowing defendant's former attorney, Daniel Donovan, to testify regarding a conversation he had with defendant about defendant's intention to appear for trial.

(3) Whether the trial court erred in giving an instruction which imputed knowledge of defendant's former attorney to defendant.

We find that the third issue is determinative of the result in this case. Here, the State had the burden of proving that defendant purposely failed, without lawful excuse, to appear at the time and date scheduled for trial. In this connection, the jury was given an instruction concerning one of the essential elements of the crime--namely, the mental state of the defendant. The instruction imputed any knowledge or notice on the part of defendant's attorney regarding the trial date to the defendant. To prove that defendant had knowledge or notice of the trial date, the State merely had to prove that his attorney had similar knowledge.

Defendant objected to the giving of this instruction on the basis that it was, in effect, a conclusive presumption.

-4-

He contends upon this appeal, citing Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, that the instruction had the effect of lowering the State's burden of proof, commenting on the evidence, and denying defendant a presumption of innocence.

In considering these contentions, our first task is aimed at focusing upon the nature of the language contained in the challenged instruction. Sandstrom, 442 U.S. at 514; Ulster County Court v. Allen (1979), 442 U.S. 140, 157-159, 99 S.Ct. 2213, 61 L.Ed.2d 777. Paraphrasing the instruction, the jury was told here, in unequivocal terms, to "presume that a client has notice and knowledge if his attorney has notice and knowledge." The jury was not told that they had a choice or could infer knowledge from a proven fact. The instruction did not state, for example:

> "You are instructed that, in determining the guilt or innocence of the defendant, you may consider the facts that his attorney, Daniel Donovan, had notice and knowledge of the trial date and that Mr. Donovan had a conversation with defendant regarding such trial date. From these facts, you may, but need not, infer that the defendant had knowledge and notice of the trial date."

Rather, the instruction gave no discretion to the jury. Its language was couched in the form of a command. Once it was determined that defendant's attorney had notice or knowledge of the trial date, the jury was permitted to form but one rational conclusion. As a conclusive or mandatory presumption, the instruction had the effect of relieving the State of its burden to prove every element of the offense beyond a reasonable doubt. The inclusion of the instruction obviated the necessity for the jury to independently examine the mental state or the intent or purpose of defendant. The giving of the instruction was, therefore, error.

-5-

If the instruction was erroneous, the State argues that the error was harmless, because the jury could have found the requisite intent independent of the directions of the instruction. The State makes reference to other items of evidence, in particular, admissions of the defendant, from which intent or mental state could have been inferred. Admittedly, while it may have been true that some jurors did not use the instruction to determine defendant's mental state and rather inferred it from other items of evidence introduced at trial, we cannot declare beyond a reasonable doubt that all of the jurors formulated defendant's mental state this way. State v. Hamilton (1980), ___ Mont. ___, 605 P.2d 1121, 1131, 37 St.Rep. 70, 81. Nor can we say that any other of the harmless error tests are particularly applicable to this case. There is, for example, no overwhelming evidence of defendant's intent. State v. Hamilton, supra. Accordingly, we find that the error was harmful and remand this case to the District Court for retrial.

In this light, we address the remaining two issues raised by defendant. The first issue, that of whether the trial court erred in allowing Barbara Gregovich to testify regarding an admission made by defendant, will, of course, present no serious problem upon retrial. Where the admission of such testimony was objectionable here primarily because it caused surprise, defense counsel will have knowledge of such testimony on remand and the fact that it may be used against him again. As a consequence, defendant will suffer no prejudice because of surprise.

As for the second issue, whether the trial court erred in allowing Daniel Donovan to testify regarding a conversation he had with defendant the morning that defendant failed

to appear for trial, that problem is also easily resolved. The testimony was objected to here because it was allegedly hearsay. The State asked Donovan what he stated to the court regarding the conversation he had with defendant. The State did not ask Donovan what defendant stated to him regarding the trial date and defendant's intentions to appear at trial. See, United States v. Freeman (9th Cir. 1975), 519 F.2d 67; United States v. McLennan (9th Cir. 1977), 563 F.2d 943. Properly framed, the question elicits a response which can only be called an admission, clearly recognized as an exception to the rules of evidence pertaining to hearsay. Rule 801(d)(2), Mont.R.Evid. Both counsel agreed during oral argument that the hearsay problems could have been solved by a properly framed question.

Accordingly, we remand this case to the District Court to proceed consistent with the guidelines set out in this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices