## Richmond

GARY PATRICK HUNTER

v.

COMMONWEALTH OF VIRGINIA

No. 1692-90-3

Decided February 16, 1993

COUNSEL

Michael T. Garrett (Pendleton, Martin, Henderson & Garrett, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General, (Mary Sue Terry, Attorney General, Margaret Ann B. Walker, Assistant Attorney General on brief), for appellee.

OPINION

**COLEMAN, J.**—Code § 19.2-128(B) provides that "[a]ny person charged with a felony offense who willfully fails to appear before any court as required" is guilty of a Class 6 felony. Gary Patrick Hunter was convicted in a jury trial of willfully failing to appear at his felony trial in the Amherst County Circuit Court. He challenges the conviction on grounds that (1) the evidence is insufficient to show that his failure to appear was willful; (2) the trial court erred by admitting into evidence his bail bond document, which showed that the felony for which he was to have been tried was robbery; and (3) the trial court erred in not declaring a mistrial based on the trial judge's telling the venire in his introductory remarks that robbery of an ABC store was the felony for which Hunter was to have been tried on the date he allegedly failed to appear. We find that the evidence is sufficient to support the conviction, and we uphold the trial court's rulings in admitting the bond document and in denying the motion for a mistrial.

Gary Patrick Hunter was charged with robbery of an ABC store in Amherst County, Virginia. He was scheduled to be tried for the robbery in Amherst County Circuit Court on May 8, 1989. Pursuant to an order entered on April 17, 1989, the trial was continued to June 9, 1989, at 9:30 a.m. On May 10, 1989, Hunter executed a "Conditions of Release, Recognizance, and Bond," posting a $50,000 bail bond, in which he promised to appear for trial on the robbery charges on June 9, 1989, at 9:30 a.m. in the Amherst County Circuit Court. Hunter listed his address on the bond document as 3428 Forest Brook Road, Lynchburg, Virginia 24501.

James H. Massie III was appointed as the attorney to represent Hunter on the Amherst County robbery charge. Hunter's case was continued from June 9, 1989, to August 22, 1989, at 9:30 a.m., and on August 22, 1989, the case was continued to September 27, 1989, at 9:30 a.m. The Amherst County Circuit Court entered orders continuing the case until the dates certain. The last continuance order, which

set Hunter's trial for September 27, 1989, also directed the clerk to issue a summons for Hunter. The summons was issued on September 1, 1989, but when the deputy attempted to serve it at the address that Hunter provided, Hunter was not found. After several unsuccessful attempts to serve process on Hunter at that address, the summons was returned on September 25, 1989, without Hunter having been served.

Hunter did not appear for trial on September 27, 1989, in the Amherst County Circuit Court. Thereafter, the Amherst County grand jury indicted Hunter for willfully and feloniously failing to appear for trial in violation of Code § 19.2-128(B). In late January, 1990, Hunter was arrested and returned to Virginia after waiving extradition from Columbus, Ohio.

At Hunter's jury trial, the trial judge, as part of his introductory remarks explaining the nature of the case to the venire, stated: ''Mr. Hunter was charged with a robbery of an ABC store'' when he allegedly failed to appear for trial. Defense counsel moved for a mistrial on the ground that identifying the felony for which Hunter failed to appear had little or no probative value and prejudiced him before the jury. The trial judge denied the motion. Thereafter, defense counsel and the Commonwealth's attorney stipulated that Hunter ''was charged with a felony which was to be tried in Amherst Circuit Court on September 27, 1989.'' Later in the trial, the Commonwealth sought to introduce Hunter's bail bond papers. Among other facts, the bond disclosed the nature of the charge as robbery, specified the amount of the bond, and contained the condition of the bond that Hunter promised to appear for trial on June 9, 1989, and ''at all times and places . . . to which this case may be rescheduled or continued.'' Defense counsel objected on the ground that the bond papers identified the charge as ''one (1) charge of robbery a felony.'' He argued that identification of the offense was irrelevant and prejudicial because the parties had stipulated that Hunter was to be tried for a felony. The court overruled the objection and admitted the bond into evidence. Hunter was convicted and sentenced to twelve months in jail in accordance with the jury verdict.

I.

Hunter contends that the evidence was insufficient to support his conviction because the Commonwealth failed to prove beyond a reasonable doubt that he "willfully fail[ed] to appear," an essential element of the offense under Code § 19.2-128(B). The evidence presented was sufficient to permit the jury to infer that Hunter willfully failed to appear at his felony trial in Amherst County Circuit Court. Thus, we reject his contention.

■ "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). A jury's verdict may not be overturned on appeal "unless it is plainly wrong or without evidence to support it." *Id.*; Code § 8.01-680.

■ When a criminal offense consists of an act and a particular *mens rea*, both the act and *mens rea* are independent and necessary elements of the crime that the Commonwealth must prove beyond a reasonable doubt. *Harrell v. Commonwealth*, 11 Va. App. 1, 6-7, 396 S.E.2d 680, 682 (1990) (citing *Dixon v. Commonwealth*, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955)). Code § 19.2-128(B) requires that the Commonwealth prove that the accused "willfully" failed to appear at trial. " '[The] correct application [of willfully] in a particular case will generally depend upon the character of the act involved and the attending circumstances.' " *Lambert v. Commonwealth*, 6 Va. App. 360, 363, 367 S.E.2d 745, 746 (1988) (quoting *Lynch v. Commonwealth*, 131 Va. 762, 766, 107 S.E. 427, 428 (1921)). "Willfully," as used in Code § 19.2-128(B), has the customary meaning that the act must have been done "purposely, intentionally, or designedly."

■ The evidence presented against Hunter supports the finding that he willfully failed to appear at his scheduled felony trial in Amherst County. " 'Any failure to appear after notice of the appearance date [is] *prima facie* evidence that such failure to appear [was] willful.' " *Trice v. United States*, 525 A.2d 176, 179 (D.C. 1987) (quoting D.C. Code § 23-1327(a)). When the government proves that an accused received timely notice of when and where to appear for trial and thereafter does not appear on the date or place specified, the fact finder may infer that the failure to appear was willful. *Smith v. United States*, 583

A.2d 975, 979 (D.C. 1990); *Raymond v. United States*, 396 A.2d 975, 978 (D.C. 1979).

In the Commonwealth's case against Hunter, the bail bond document that he signed contained his written promise to appear at trial on June 9, 1989, and to appear ''at all times and places and before any court or judge to which this case may be rescheduled, continued, [or] transferred.'' The Commonwealth's evidence proved that the trial court entered an order on May 25, 1989, continuing the case from June 9, 1989, until August 22, 1989, and an order on June 13, 1989, continuing the case until September 27, 1989, at 9:30 a.m. Hunter had notice, as evidenced by the bond he executed, that his original trial date was June 9, 1989. According to the terms of his bond, he promised to appear on any date to which his case was rescheduled and continued. The trial court duly entered orders of record in the Clerk's Office of the Amherst Circuit Court. The orders continued and rescheduled his case to dates certain. An accused who is given notice of the original trial date is charged with notice of those dates to which his or her case is expressly continued when such action is duly recorded in the order of the court. *See generally Smith v. United States*, 583 A.2d 975 (D.C. 1990) (defendant who failed to appear charged with notice of courtroom change where it is shown that notice of such change was, in fact, posted in accordance with routine practice; reversed because evidence failed to prove that notice of courtroom change posted or that defendant knew of change).

Not only was Hunter charged with knowledge of the trial dates noted in the court's orders, which are public records, but he also had an attorney of record in the case. The attorney-client relationship presumes that attorney and client, as servant and master, will communicate about all the important stages of the client's upcoming trial. Notice to Hunter's attorney of record of the trial date is evidence that the notice was given to Hunter. *See Virginia Dep't of Corrections v. Crowley*, 227 Va. 254, 263-64, 316 S.E.2d 439, 444 (1984) (citing Code § 8.01-314, which states that notice to counsel of record by entry of an order ''shall have the same effect as if service had been made upon such party personally''). Therefore, if the attorney had actual notice of the client's trial date, the fact finder may infer from that evidence that the client also had actual notice of the trial date. *State v. Blackbird*, 609 P.2d 708, 710 (Mont. 1980) (error to instruct jury that notice to attorney conclusive of notice to client; jury may only consider as a fact for permissible inference). Thus, because Hunter's attorney

had notice of the trial date, it was reasonable for the jury to infer that Hunter had notice that he was to appear for his trial on September 27, 1989. Accordingly, evidence that sequential orders had been duly entered of record providing for a date certain or notice of the trial date to counsel of record, without more, established a *prima facie* case that Hunter knew the date on which his felony trial was scheduled in Amherst County Circuit Court and that he willfully failed to appear.

The Commonwealth's evidence in Hunter's case, however, went beyond establishing the minimum for *prima facie* proof that Hunter willfully failed to appear for trial. The evidence showed that Hunter had actual personal notice of his trial date. Hunter's counsel testified that he had personally informed Hunter of the trial date at least six times. The attorney's secretary testified that she had informed Hunter of his trial date at least three times. Another attorney, who represented Hunter on other felony charges in Lynchburg, testified that Hunter had discussed the Amherst County trial date with him, and although the attorney could not recall the exact date discussed, Hunter had told him that the Amherst County trial was scheduled after the trial in Lynchburg, which was set for September 26, 1989, one day before the scheduled trial in Amherst County.

Additional evidence was presented from which the jury could infer that Hunter knew of the trial date and willfully and purposely failed to appear. Willfulness can be proven by showing that the defendant "purposefully engaged in a course of conduct designed to prevent him from receiving . . . notice to appear." *State v. Hoskins*, 401 A.2d 619, 624 (Conn. Super. Ct. 1978); *McGee v. State*, 438 So. 2d 127, 130 (Fla. Dist. Ct. App. 1983); *United States v. Cohen*, 450 F.2d 1019, 1021 (5th Cir. 1971). The trial judge issued a summons on September 1, 1989, for Hunter to appear at trial on September 27, 1989. The summons was directed to the address that Hunter provided on his bond papers, 3428 Forest Brook Road, Lynchburg, Virginia. The officer was unable to serve the summons because Hunter could not be found at this address. The evidence was such that the fact finder could conclude that Hunter took action to prevent the police from locating him by changing his address and by leaving the state. Although Hunter testified that he moved from that address because of marital difficulties, his bond expressly required that he not depart Virginia without leave of the trial court. The evidence shows that Hunter left Virginia and went to Columbus, Ohio, without notifying the court, in

violation of the bond condition. The jury was not required to believe Hunter's explanation of why he left, especially in light of the fact that he did not obtain approval of the court or inform the court of his new address.

Based on the evidence that Hunter had notice of the date, time and place of his scheduled felony trial, that he failed to appear, that he purposefully engaged in conduct that prevented receipt of notice, and that he left the state in violation of the conditions of his bail bond, the jury could reasonably infer that Hunter willfully failed to appear at his felony trial. Accordingly, we reject Hunter's contention that the evidence was insufficient to support his conviction.

## II.

Hunter next contends that the trial court erred by admitting into evidence the bail bond document that showed that he was to have been tried for robbery when he failed to appear for trial. He argues that the specific offense for which he had been charged was irrelevant because he had stipulated that he was to be tried for a felony; therefore, to admit evidence that he was charged with robbery served no legitimate purpose and only prejudiced him before the jury.

■ A trial judge's ruling on the admissibility of evidence "will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). " 'Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted.' " *Minor v. Commonwealth*, 6 Va. App. 366, 372, 369 S.E.2d 206, 209 (1988) (quoting *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).

■ The fact that Hunter was to stand trial for robbery is highly relevant. That evidence has significant probative value in two respects: first, it proved the material element that Hunter was charged with a felony; second, it proved that due to the serious nature of the charge, he had a reason for willfully failing to appear. Furthermore, Hunter's situation is distinguishable from the line of cases, such as *Powell v. Commonwealth*, 13 Va. App. 17, 409 S.E.2d 622 (1991), and *Joyner v. Commonwealth*, 10 Va. App. 290, 299, 392 S.E.2d 822, 826-27 (1990), in which we have held that the Commonwealth may not introduce evidence of a specific felony conviction during cross-examination for the collateral purpose of impeaching a defendant. In *Powell*

and *Joyner*, it was the fact of a felony conviction which could be considered for impeachment, and the nature of the felony had little or no relevance to any material issue in the cases. The fact that the defendants in those cases had been convicted of felonies went only to impeachment. Thus, proof that the defendants had been previously convicted of specific felonies went only to collateral issues and, for that reason, proof of the nature of the offense tended to be more prejudicial than probative. The fact that Hunter was to stand trial for robbery, however, was highly probative of a material issue; it tended to prove Hunter's motive for failing to appear, which is relevant to whether his failure to appear was willful. Willfulness was an element of the offense that the Commonwealth was required to prove. Hunter was not entitled to foreclose the Commonwealth from presenting relevant evidence to prove an essential element of the charged offense by stipulating that the evidence would establish the fact. *Glover v. Commonwealth*, 3 Va. App. 152, 162, 348 S.E.2d 434, 441 (1986), *aff'd*, 236 Va. 1, 372 S.E.2d 134 (1988). Furthermore, in Hunter's prosecution, the evidence was not that he had a prior felony conviction or that he had committed robbery; the evidence was that he was to stand trial for robbery, which is a felony.

Because the Commonwealth had the burden of proving beyond a reasonable doubt all elements of the charged offense, an accused may not limit the Commonwealth's presentation of its evidence or dictate the form in which relevant and material evidence will be admitted by offering "partial or qualified stipulations." *Colclasure v. Commonwealth*, 10 Va. App. 200, 202, 390 S.E.2d 790, 791 (1990). Furthermore, the fact that Hunter was to stand trial for robbery at an ABC store had separate and independent relevance. The jury was entitled to consider that fact in deciding whether Hunter willfully and purposefully failed to appear to avoid standing trial for a serious felony. In addition, the signed bail bond papers, even though they specified the charged felony, also proved that Hunter had been released on bail and had signed a written promise to appear for trial on a date certain. The trial judge does not abuse his discretion by admitting evidence that is relevant and material because it is highly probative of an essential element of the offense. Thus, the trial judge did not err by admitting the bail bond papers.

### III.

Having held that the trial judge did not err by admitting evidence that Hunter's bail bond papers showed he was to stand trial for

robbery, it necessarily follows that the trial judge did not err by telling the jury in his introductory description of the offense charged in the indictment that Hunter was accused of willfully failing to appear for the felony trial of robbery at an ABC store. Accordingly, the motion for a mistrial was without merit. On appeal, the trial judge's denial of a motion for mistrial will not be reversed in the absence of a "manifest probability that the denial of a mistrial was prejudicial" to the defendant. *Harward v. Commonwealth*, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988). The trial judge's statement merely informed the jury of the charges in the indictment. Since the judge's statement conveyed to the jury essentially the same information about the charge as was permissible by the proof in the bail bond document that was admissible, the trial judge did not err in denying his motion for a mistrial.

For the foregoing reasons, we affirm Hunter's conviction.

*Affirmed.*

Baker, J., Moon, J., Willis, J., Elder, J., Bray, J., and Fitzpatrick, J., concurred.

Benton, J., with whom Koontz, C.J., joins, dissenting.

The specific felony for which Gary Patrick Hunter was to be tried when he failed to appear for trial is irrelevant to a prosecution under Code § 19.2-128(B). The language of the statute demonstrates the irrelevance of the specific type of felony.

Any person charged with a felony offense who willfully fails to appear before any court as required shall be guilty of a Class 6 felony. Any person charged with a misdemeanor offense who willfully fails to appear before any court as required shall be guilty of a Class 1 misdemeanor.

Code § 19.2-128(B). It should be evident from reading the statute that willful failure to appear for the trial of *any* felony provides the predicate for a prosecution.

Moreover, the indictment against Hunter read as follows:

The Grand Jurors of the State of Virginia, in and for the body of the County of Amherst, upon their oaths present that GARY PATRICK HUNTER, heretofore, to-wit: on the 27th day of SEPTEMBER, 1989, in the said County of Amherst, and within the

jurisdiction of the Circuit Court of Amherst County did unlawfully and feloniously and willfully fail to appear before the Circuit Court of Amherst County when required to do so in violation of Virginia Code Section 19.2-128, 1950, as amended, against the peace and dignity of the Commonwealth of Virginia.

Nothing in the indictment states the nature of the felony for which Hunter was to be tried on the day that he failed to appear.

Consistent with the statutory language and the wording of the indictment, Hunter and his counsel entered into the following written stipulation with the Commonwealth's attorney prior to trial:

## STIPULATION

1. Gary Patrick Hunter was charged with a felony which was to be tried in Amherst Circuit Court on September 27, 1989.

2. Gary Patrick Hunter was released on bond pursuant to Chapter 9 of Title 19.2 of the Code of Virginia of 1950 prior to trial on September 27, 1989. He was admitted to bail on May 10, 1989.

3. Gary Patrick Hunter signed a waiver of extradition from the State of Ohio on January 23, 1990, to return to Virginia.

The stipulation was neither partial or qualified.

The trial judge first injected the issue of the specific type of felony when he informed the prospective jurors of the robbery charge. The trial judge overruled Hunter's objection and motion for a mistrial. Later, when the Commonwealth offered the bond form as an exhibit, Hunter's counsel again objected because the form contained the word "robbery." The Commonwealth's attorney agreed to delete the word, stating, "Judge, I have no problem with whiting [the word robbery] out." However, the trial judge refused to make the deletion because he believed the jury was entitled to know the specific type of felony charged. The trial judge erred when he injected the robbery issue and when he refused to make the deletion suggested by both counsel.

Simply put, when the specific type of felony is not relevant to proof of any element of the charged offense, proof of the nature of the felony is prejudicial. *See McAmis v. Commonwealth*, 225 Va. 419, 422, 304 S.E.2d 2, 4 (1983) (per curiam); *Harmon v. Commonwealth*, 212 Va. 442, 446, 185 S.E.2d 48, 51 (1971); *Powell v. Commonwealth*, 13 Va. App. 17, 25, 409 S.E.2d 622, 627 (1991); *Joyner v.*

*Commonwealth*, 10 Va. App. 290, 298, 392 S.E.2d 822, 826-27 (1990). Contrary to the assertion in the majority opinion, proof of "the material element that Hunter was charged with a felony" did not require naming the felony. The wording of the statute is the primary source for determining the elements of a statutory offense. According to Code § 19.2-128(B), the Commonwealth was required to prove only that the offense for which Hunter was to have been tried was a felony. In his concurring and dissenting opinion, Barrow, J., cogently explains why "proof of the nature of the offense was not necessary to prove that the offense was a felony" and why it was prejudicial. I join in that portion of his opinion.

The majority further concludes that because robbery is a "serious offense" the jury was entitled to know that it was the felony. I disagree with that reasoning. Every felony is a "serious offense." That is precisely the reason why the legislature made the willful failure to appear for any felony trial a felony. Moreover, within the classification of felony offenses, robbery, per se, is certainly not as "serious" as murder, rape, or a multitude of other felonies. Indeed, the offense of robbery may, itself, vary in seriousness depending on circumstances. The jury was not informed, for example, whether the taking was accomplished merely by intimidation. *See Harris v. Commonwealth*, 3 Va. App. 519, 351 S.E.2d 356 (1986). Proof that the felony was robbery did not *ipse dixit* make it more likely than not that Hunter "had a reason for willfully failing to appear." Reference to the specific nature of the felony had no bearing on whether the failure to appear was willful.

Citing *Glover v. Commonwealth*, 3 Va. App. 152, 162, 348 S.E.2d 434, 441 (1986), *aff'd per curiam*, 236 Va. 1, 372 S.E.2d 134 (1988), and *Colclasure v. Commonwealth*, 10 Va. App. 200, 202, 390 S.E.2d 790, 791 (1990), the majority asserts that "Hunter was not entitled to foreclose the Commonwealth from presenting relevant evidence to prove an essential element of the charged offense by stipulating that the evidence would establish the fact." Both cases are inapposite. In neither case did the Commonwealth and the defendant reach a stipulated agreement. In *Glover*, this court specifically said that "[t]he Commonwealth . . . is not obliged to enter into an agreement whereby it is precluded from putting on its evidence *simply because the defendant is willing to make a qualified stipulation.*" 3 Va. App. at 162, 348 S.E.2d at 441 (emphasis added). Likewise, in *Colclasure*, the defendant offered stipulations that the Commonwealth did not accept. 10

Va. App. at 202, 390 S.E.2d at 791. The issue in this case, however, is not whether the Commonwealth was obligated to agree to a stipulation limiting the evidence. The Commonwealth voluntarily agreed with Hunter to a full stipulation. It was the trial judge that insisted on admitting the evidence of the specific offense over the Commonwealth's agreement to deleting the word "robbery." Hunter could not foreclose the Commonwealth from presenting that which the Commonwealth did not seek to present. The prejudicial error occurred when the trial judge concluded on his own initiative that evidence of "robbery" rather than "felony" had to be proved. The trial judge's error in informing the jury of the specific offense was reversible error.

The conviction should also be reversed because the evidence does not prove that Hunter's failure to appear was willful. *See* Code § 19.2-128(B). Hunter's trial initially was scheduled for June 9, 1989. Hunter was present in court when the date was set and signed the bail form. In May 1989, the trial was continued to August 22, 1989. On June 13, 1989, the trial was continued to September 27, 1989. Hunter was not present when those changes were made and was not given written notice of any of those changes. Citing *Virginia Department of Corrections v. Crowley*, 227 Va. 254, 263-64, 316 S.E.2d 439, 444 (1984), and *State v. Blackbird*, 609 P.2d 708, 710 (Mont. 1980), the majority holds that notice to Hunter's attorney was tantamount to notice to Hunter. The majority then concludes that such constructive notice proved that Hunter's failure to appear was willful. Neither case, however, supports the majority's reasoning. In *Blackbird*, the court reversed the conviction precisely because the jury "instruction imputed any knowledge or notice on the part of defendant's attorney regarding the trial date to the defendant." *Id.* In *Crowley*, the issue was whether defendant's counsel was still counsel of record when a motion was served by mailing it to counsel's office. *Crowley*, 227 Va. at 263-64, 316 S.E.2d at 444. Neither case supports the majority's holding that actual notice to Hunter's counsel was *prima facie* proof of actual notice to Hunter. Mere proof that Hunter's counsel knew the trial date was insufficient to prove that Hunter had actual knowledge of the date.

Without objection on the record, Hunter's first defense counsel, Massie, testified as a prosecution witness. Because no issue was raised at trial or on this appeal concerning attorney-client privilege, the record proves Massie testified that Hunter called him two or three times a week to discuss the progress of his case. Massie testified, however,

that when the hearing was held on June 13 to set the trial for September 27, Hunter was not present. Massie did not send Hunter any written notice of the changed date. He testified:

I would say I told him— and we talked about the date, we talked about the date in relationship to other matters that were pending against him.

It was clear in my mind that certainly—a case of this severity—a case where you're talking about going to the penitentiary for life—he knew what the court date was, and I told him, I'd say a half a dozen times.

We met over there one time in Preston Sawyer's office, a lawyer in Lynchburg, and it was again related towards the end of August—at least. That's one time specifically we discussed court dates when he and I were there and Mr. Sawyer was his attorney in other—other things.

Massie testified that the last time he could recall talking to Hunter "was some time around that—in August—the second or third week in August."

Massie further testified that he never wrote to Hunter while he represented Hunter. He also testified that he was told by the judge who scheduled the September trial date in Hunter's absence to send a letter to Hunter informing Hunter of the trial date. Massie did not do so. Indeed, Massie testified, "I had [Hunter's] mother's address . . . . I don't know whether I had a direct address for [Hunter] or not." Massie's file contained no notation that he had informed Hunter at anytime of the trial date. Massie's file indicates that Hunter's trials were set for May 8, 1989, June 9, 1989, August 22, 1989, and September 27, 1989.

Although Massie testified that he discussed court dates with Hunter in the meeting with Hunter and his Lynchburg attorney, the attorney who was representing Hunter in Lynchburg testified, over an attorney-client privilege objection, that his only meeting with Hunter was on July 10 in his office. He did not recall discussing the specific date of September 27 with Hunter. He testified:

[COMMONWEALTH'S ATTORNEY]: There's no question in your mind he knew he was supposed to be here September the 27th?

[HUNTER'S ATTORNEY]: I object. He's leading his witness.

THE COURT: Do you recall discussing the exact date?

THE WITNESS: No, I don't, Judge.

THE COURT: Of September 27th?

THE WITNESS: No, I do know that the Lynchburg case according to my records, was set for the 26th of September. I do remember that the case in Lynchburg was to be tried prior to the case in Amherst. I didn't realize until looking at my notes that apparently they were back to back, day after day.

THE COURT: So you don't recall discussing any specific date for the trial—

THE WITNESS: Not the exact date, no, sir.

THE COURT:—in Amherst with Mr. Hunter?

THE WITNESS: No, sir.

THE COURT: Just discussing a trial date, is that right?

THE WITNESS: Discussing the fact that there was to be a trial in Amherst and the trial—I mean, I was aware of the trial date at the time, although I didn't make note of it in that apparently the trial in Amherst was to take place after the trial in Lynchburg.

He further testified:

Q: Is it your testimony that at the time you talked with [Hunter] you were not consciously aware that [the Amherst trial date] was September 27th?

A: That's true.

His file contained no notation that he had discussed with Hunter the September 27 date of Hunter's Amherst trial.

Massie's secretary testified that she verbally informed Hunter of the trial date; however, she could not recall the last time she told Hunter of the date. She testified that she recalled telling Hunter because:

Well, it was the seriousness of the crime, itself. Mr. Massie wasn't taking this lightly. I wasn't. We always try to be sure that the client knows when he's supposed to be in court.

She made no notations in the file that Hunter had called or that she had given him any of the four trial dates. Although she testified that she informed Hunter three or four times of the last trial date, she could not recall how many times she told Hunter of the earlier trial dates. She also could not recall the first three trial dates or even the months in which those trials were to be held.

Massie testified that Hunter would often leave messages and notes for him. Massie also testified that Hunter was more interested in assisting with the preparation for trial than any of his other clients. Hunter testified that he often took documents to Massie and that the last trial date he was given was August 22. Massie did not testify that he had informed Hunter of the cancellation of that trial. Indeed, Hunter and another witness testified that Hunter appeared in court on August 22. Hunter testified that the case was not called, and he was told by "the bailiff that [the] court date had been cancelled." Hunter testified that he "thought that they had dropped the charges." He said that he called Massie's office and was told Massie was on vacation.

Hunter testified that in September he moved out of his house on Forest Brook Road because he and his wife were having problems. He moved to a house that he owned on Hawes Street. Prior to the September trial, a summons was issued for Hunter's appearance at trial. Attempting to serve the summons, Deputy Hughes went "by the house [on Forest Brook Road] three, four, five, six, seven times looking for [Hunter]." He did not speak to Hunter's wife and did not tell anyone that he was seeking Hunter. Officer Calloway looked for Hunter after Deputy Hughes did not serve Hunter. Calloway, however, did not knock on the door of the house at the address listed on the summons. He did not make inquiry at either of the two addresses he had for Hunter because he did not see any vehicles at the houses.

Hunter testified that during this time he was living at the Hawes Street residence and that, due to the nature of his business as a contractor, he travelled out of Lynchburg to various job sites. Hunter testified that he went to Ohio in the latter part of October 1989 to work on a construction contract. No evidence proved that Hunter's change of address or visit to Ohio was done, as stated by the majority, "to prevent the police from locating him." Hunter testified that no one told him that the sheriff's deputies were looking for him. Hunter was arrested in Ohio in January 1990. In February 1990, when Hunter was returned to Virginia and jailed he gave his address as Hawes Street.

This evidence failed to prove beyond a reasonable doubt that Hunter's failure to appear at trial was willful. It does not exclude the reasonable hypothesis that Hunter had no actual notice of the last trial date. None of the three cases relied upon by the majority supports their conclusion that Hunter acted willfully in this case. In *Smith v. United States*, 583 A.2d 975 (D.C. 1990), the court reversed a conviction because the defendant appeared on the proper day but trial had been shifted to another courtroom. The court observed that the written notice-to-return form did not provide the defendant with guidance concerning administrative changes. *Id.* at 979 n.7. In *Trice v. United States*, 525 A.2d 176 (D.C. 1987), the defendant was convicted after he failed to appear on the date that was specified on the bail release document. *Id.* at 177. However, the trial date had never been continued or changed from the date that was "stated immediately above [the defendant's] signature." *Id.* at 179. Likewise, in *Raymond v. United States*, 396 A.2d 975 (D.C. 1979), the defendant was in court when the hearing date was set and signed a document containing the date of the hearing. *Id.* at 976. That hearing date also had not been changed.

"[W]illfulness must be shown by evidence that the defendant's failure to appear was knowing, intentional and deliberate rather than inadvertent or accidental." *Smith*, 583 A.2d at 979 (citing *Trice*, 525 A.2d at 181). The evidence in this case does not exclude the latter hypotheses. I dissent.

Barrow, J., concurring and dissenting.

The nature of the offense for which the defendant did not appear was not, in my opinion, admissible into evidence. Proof of the nature of the offense was not needed to prove that the offense was a felony, nor was it needed to prove that the offense was "serious." Thus, it had no probative value.

Admittedly, a criminal defendant may not preclude the Commonwealth from introducing *otherwise* admissible evidence by offering to stipulate the facts which the evidence would tend to show. *Spencer v. Commonwealth*, 240 Va. 78, 91, 393 S.E.2d 609, 617, *cert. denied*, 498 U.S. 908 (1990). This, however, does not answer our question. We must decide whether evidence of the nature of the offense is "otherwise admissible."

Both the Supreme Court and this court have recognized and followed the principle that the nature of a felony conviction has little

probative value but contains great risk of undue prejudice to a defendant. Even though the fact of a conviction is admissible to impeach the credibility of a defendant, "neither the name of the felony, other than perjury, nor the details of the crime [are] admissible in evidence." *Sadoski v. Commonwealth*, 219 Va. 1069, 1070, 254 S.E.2d 100, 101 (1979); *see also McAmis v. Commonwealth*, 225 Va. 419, 422, 304 S.E.2d 2, 4 (1983) (per curiam); *Joyner v. Commonwealth*, 10 Va. App. 290, 299, 392 S.E.2d 822, 827 (1990); *Powell v. Commonwealth*, 13 Va. App. 17, 23, 409 S.E.2d 622, 626 (1991). Even where a defendant testifies untruthfully on direct examination concerning the number of his prior felony convictions, the Commonwealth, although entitled to impeach him by proving the actual number of felony convictions, may not, in doing so, prove the name or nature of prior convictions having little or no probative value. *Powell*, 13 Va. App. at 24-25, 409 S.E.2d at 626-27.

The underlying purpose of this rule is "to avoid undue prejudice against the accused" by the unnecessary introduction of evidence of a crime for which he is not on trial. *Sadoski*, 219 Va. at 1070, 254 S.E.2d at 101. In other words, "all relevant evidence is not necessarily admissible; where the prejudicial effect of relevant evidence so outweighs its probative value that it may unduly influence the outcome of the case, it must be excluded." *Powell*, 13 Va. App. at 24, 409 S.E.2d at 627.

The rationale of *McAmis*, *Joyner* and *Powell* excludes evidence that the crime with which the defendant was charged was robbery if its sole purpose is to prove that the charge was a felony. Such evidence, offered only for this purpose, has no probative value and a significant prejudicial effect.

Evidence of the name and nature of the offense had no probative value regarding the jury's determination of whether the offense charged is a felony. A jury's sole function is to resolve "disputed facts." *Speet v. Bacaj*, 237 Va. 290, 296, 377 S.E.2d 397, 400 (1989). The defendant did not dispute that the offense with which he was charged was a felony. Even if the defendant had disputed the issue, whether the offense is a felony is a question of law, not of fact, to be resolved by the trial court, not the jury. *See Jones v. Commonwealth*, 184 Va. 679, 681, 36 S.E.2d 571, 572 (1946); *Commonwealth v. Beavers*, 150 Va. 33, 40, 142 S.E. 402, 404 (1928).

Proof that a defendant is charged with a felony, without proof of the name or the nature of the felony, is sufficient to prove the required element of Code § 19.2-128(B). Evidence of the indictment with the name and nature of the offense redacted would have sufficiently proved the fact that the defendant was charged with a criminal offense. Whether the offense was a felony is a question of law which should have been resolved by the court without apprising the jury of the name or nature of the offense.

Moreover, disclosure of the name and nature of a prior felony greatly increased the risk of prejudice that would follow from proof of the fact of a prior felony conviction. *Powell*, 13 Va. App. at 25, 409 S.E.2d at 627. A jury is more inclined to consider such evidence ''as tending to show that [the defendant] is probably guilty . . . or is a person of bad character.'' *Id.* Thus, evidence that the defendant was charged with robbery had no probative value in proving that the offense was a felony, but had significant and undue prejudicial effect when admitted solely for that purpose. Admitting the evidence for that reason served only to undermine the long-held principle barring the admissibility of such evidence.

In addition, Judge Benton's dissent persuasively expresses why the evidence of the nature of the offense was also not admissible to prove that the offense was ''serious,'' and I agree with him in that regard.

I do not, however, concur with Judge Benton that the evidence was insufficient to permit a finding that the defendant's failure to appear was willful. Instead, I am of the opinion that the testimony of the defendant's attorney that he told the defendant of the trial date was sufficient to support a finding that the defendant actually knew the trial date. Therefore, I find it unnecessary to address, as does the majority, whether the defendant had constructive knowledge of the date and whether this is sufficient to support the conviction. Consequently, I would reverse the defendant's conviction and remand the matter for a new trial.