NO.   94-509

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

     Plaintiff and Respondent,

  v.

DAMON PATRICK WEREMAN,

     Defendant and Appellant.

FILED

SEP 14 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifth Judicial District,
              In and for the County of Jefferson,
              The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          William F. Hooks, State Appellate Defender,
          Helena, Montana

     For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Elizabeth L. Griffing, Assistant Attorney
          General, Helena, Montana

          Deborah Butler, Acting Jefferson County
          Attorney, Boulder, Montana


Submitted on Briefs:   June 29, 1995

Decided:   September 14, 1995

Filed:

_____
       Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, Damon Patrick Wereman, was charged by information in the District Court of the Fifth Judicial District in Jefferson County with bail jumping pursuant to § 45-7-308, MCA. Following trial by jury, a guilty verdict was returned. Wereman appeals from his conviction. We affirm the judgment of the District Court.

The issues on appeal are:

1. Did the District Court err when it admitted evidence of prior statements by Wereman's counsel to the effect that he had not been able to locate his client?

2. Did the District Court err when it instructed the jury that notice to counsel was considered notice to his client?

FACTUAL BACKGROUND

On August 12, 1985, Wereman was charged by information with aggravated assault in the Fifth Judicial District Court in Jefferson County. The District Court set bail at $2500 and ordered Wereman to make his initial appearance on August 26, 1985. Wereman's bail was posted, conditioned on his appearance in court, and he was released from jail on August 13, 1985. Wereman failed to appear on August 26, 1985, and the court rescheduled his initial appearance for September 3, 1985. Again, Wereman failed to appear. On September 9, 1985, Wereman's counsel appeared in the District Court without his client and told the District Court that he had unsuccessfully attempted to contact Wereman. Accordingly, the District Court ordered that Wereman's bail be forfeited.

2

On April 14, 1993, Wereman was arrested in Helena, based on misdemeanor charges. He was then transferred to the Jefferson County Jail in Boulder to await further prosection of the 1985 aggravated assault charge.

However, that charge was dismissed, and instead, Wereman was charged with bail jumping in violation of § 45-7-308, MCA.

The trial of that charge commenced on May 4, 1994. During the trial, over Wereman's objection, the State introduced a minute entry from the September 9, 1985, hearing during which Wereman's counsel told the District Court that he had attempted but failed to contact Wereman concerning Wereman's initial appearance in the aggravated assault case. Thereafter, the jury returned a guilty verdict.

Wereman was sentenced to ten years in prison, with five years suspended, for bail-jumping. The District Court also designated Wereman a persistent felony offender and, as a result, sentenced him to an additional five years in prison to be served consecutively with the bail-jumping sentence. The court also designated Wereman as a dangerous offender for purposes of parole. Wereman appeals the judgment of the District Court.

## ISSUE 1

Did the District Court err when it admitted evidence of prior statements by Wereman's counsel to the effect that he had not been able to locate his client?

3

We review a district court's admission of evidence to determine whether the district court abused its discretion in doing so. *State v. Passama* (1993), 261 Mont. 338, 341, 863 P.2d 378, 380.

> The district court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of discretion, the trial court's determination will not be overturned.

*Passama*, 863 P.2d at 380 (citing *State v. Crist* (1992), 253 Mont. 442, 445, 833 P.2d 1052, 1054).

Furthermore, "[n]o cause shall be reversed by reason of any error committed by the trial court against the appellant unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Section 46-20-701(2), MCA.

The District Court admitted a minute entry that indicated that Wereman's counsel had informed the District Court that he had "tried different ways in which to contact [Wereman] . . . but could not find him . . ." Wereman argues that admission of the minute entry created a conflict of interest for his counsel, and therefore, was a violation of his constitutionally guaranteed right to effective assistance of counsel pursuant to the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution.

The starting point for analyzing ineffective assistance claims is *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674. In that case, the United States Supreme Court

4

established a two-part test. First, the defendant must prove that counsel's performance was deficient. Second, the defendant must prove that the deficient performance prejudiced the defendant. *Strickland. 466* U.S. at 687.

In support of his contention that he did not receive effective assistance of counsel, Wereman directs our attention to *State v. Christenson* (1991), 250 Mont. 351, 820 P.2d 1303. In that decision, we set out the two correlative rights established by United States Supreme Court case law in relation to the Sixth Amendment's guarantee of effective assistance of counsel. Those two rights are: (1) the right to reasonably competent counsel (citing *McMann v. Richardson* (1970), 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, *25* L. Ed. 2d 763, 773; and (2) the right to counsel's undivided loyalty (citing *Wood v. Georgia* (1981), 450 U.S. 261, 271-72, 101 S. Ct. 1097, 1103-04, 67 L. Ed. 2d 220, 230). We recognized in *Christenson* that criminal defendants may raise different sorts of ineffective assistance claims to which courts must, correspondingly, apply different tests. For example, when a criminal defendant raises issues relating to conflicts of interest, as Wereman does here, we will apply the test the Supreme Court established in *Cuyler v. Sullivan* (1980), *446* U.S. 335, 100 S. Ct. 1708, *64* L. Ed. 2d 333. In *Cuyler*, the Court held that ineffective assistance by conflict of interest requires proof that: (1) counsel actively represented conflicting interests; and (2) an actual

conflict of interest adversely affected counsel's performance. *Cuyler*, 446 U.S. at 350, 100 S. Ct. at 1719.

We have stated that we will presume prejudice if the defendant can establish both prongs of the *Cuyler* test. **Christenson**, 820 P.2d at 1306. The reason for this is that a presumption of prejudice is warranted in such a circumstance because "the duty of loyalty, 'perhaps the most basic of counsel's duties,' is breached and 'it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests."' *Christenson, 820* P.2d at 1306 (citing *Strickland v. Washington* (1984), *466* U.S. 668, 692, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674, 696).

Wereman contends that admission of his counsel's remarks effectively transformed his counsel into the State's key witness. He also contends that once the District Court admitted the minute entry, the court "placed counsel in an insoluble dilemma, for he could not challenge the state's evidence when he was the source of that evidence. . In short, counsel's statements were used against his client, and he could not advocate on behalf of his client."

Wereman relies on *Uptain v. United States* (5th Cir. 1982), 692 F.2d 8. In that case, the defendant had been indicted for bail jumping. During trial, the government called Uptain's counsel to testify that Uptain had notice of the trial date. Uptain's counsel was the only witness the government called to testify, with the exception of a rebuttal witness. Counsel testified that he had sent two

6

letters by certified mail to the defendant **indicating** when the trial date was, but that the receipts evidencing their delivery had never been returned to him. Uptain's counsel also testified that he had spoken with the defendant over the telephone concerning the trial date and, although he could not recall whether he had told the defendant the date of trial, it was his normal procedure to do so.

The Fifth Circuit Court of Appeals ruled that counsel's testimony **was** "undeniably inherently prejudicial." The court emphasized the fact that the government's only witness was the defendant's counsel and that counsel could not have adequately defended his client when to do so required that he minimize the significance of his own testimony. In reaching its conclusion, the court also emphasized that the defendant's only defense to the bail-jumping charge was that he did not have either written or oral notice of the trial date. *Uptain*, 692 F.2d at 10.

The facts in this case differ considerably from those in *Uptain*. Here, the State presented several witnesses to establish the elements of bail jumping; Wereman's counsel was not called as a witness; notice was not an issue; and the minute entry at issue would not have shown notice, even if it had been an issue. All the **minute** entry did show was that Wereman's counsel did not know where Wereman was on September 9, 1985. The fact that lack of notice was not the reason for Wereman's failure to appear is evident from his

7

own testimony. On direct examination, Wereman testified as follows:

> **Q:** (DEFENSE COUNSEL) And did you show up for any further court proceedings once you bailed out?
>
> A: (WEREMAN) I'm not too sure. I don't think I did.
>
> **Q:** Okay. And what was -- what was your intention at that time, Pat? Did -- did you intend to run away, or did you have some other idea? What was your -- what was your thinking at that time?
>
> A: It was pretty clear to me the case was going to be thrown out. . So I just figured it was history.
>
> **Q:** And how did you come to form that opinion?
>
> A: Oh, just talking with different people and stuff.

Subsequently, after Wereman refused to answer questions during cross-examination, the District Court asked Wereman if he had failed to make his initial appearance, to which Wereman responded, "It's pretty obvious."

Based on the above discussion, we conclude that admission of the minute entry did not adversely affect counsel's ability to defend Wereman in this case, and therefore, did not satisfy the second prong of the *Cuyler* test to establish ineffective assistance of counsel. Furthermore, even if the District Court had abused its discretion by admission of the minute entry, we conclude, based on a review of the evidence and issues presented, that the minute entry was not prejudicial to the defendant, and therefore, does not serve as a basis for reversal of the District Court's judgment.

8

Did the District Court err when it instructed the jury that notice to counsel was considered notice to his client?

We review jury instructions in criminal cases to determine whether the instructions, "as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. Brandon* (1994), 264 Mont. 231, 237, 870 P.2d 734, 737 (citing *State v. Lundblade* (1981), 191 Mont. 526, 529, 625 P.2d 545, 548). The district court must provide the jury with instructions for each issue or theory which is supported by the record. *Brandon*, 870 P.2d at 737 (citing *State v. Popescu* (1989), 237 Mont. 493, 495, 774 P.2d 395, 396).

The District Court instructed the jury that "[n]otice to an attorney of a court date is notice to the client and knowledge of the attorney is knowledge of his client." Wereman contends that this instruction relieved the State of proving every element of the bail-jumping offense beyond a reasonable doubt and, in particular, the mental-state element. In other words, Wereman contends that the instruction imputed his counsel's notice to him. Wereman relies on our decision in *State v. Blackbird* (19801, 187 Mont. 270, 609 P.2d 708, to support his argument. In *Blackbird*, the defendant was charged with bail jumping for failing to appear for trial in connection with burglary, aggravated burglary, attempted burglary, and sexual intercourse without consent charges. At trial, one of Blackbird's defenses was that it was not his purpose to not appear for trial. At the close of trial, the court issued a jury

instruction which was, in substance, identical to the one at issue here. We held that the instruction should not have been given because it did not allow the jury to independently assess Blackbird's mental state. *Blackbird,* 609 P.2d at 710. We also concluded that giving the instruction was not harmless error.

However, for the reasons set forth in the previous section of this opinion, we conclude that while this instruction should not have been given, it was harmless in the context of this case. Again, Wereman himself testified regarding his reason for not appearing. He stated it was because the charges lacked **merit** and would be dropped. He said nothing about lack of notice. It was simply not an issue in this case. While Wereman could not have been compelled to testify, he chose to waive his Fifth Amendment right to remain silent (at least until cross-examination). Therefore, his own admissions, and any reasonable inference from those admissions, must be considered.

Therefore, we conclude that the jury instruction complained of was harmless beyond a reasonable doubt and that it did not contribute to the jury's verdict.

Accordingly, we affirm the decision of the District Court.

_____
Justice

10

we concur:

_____
Chief Justice

_____

_____
Justices

11

Justice W. William Leaphart, dissenting.

I dissent from the Court's opinion on issue two. The District Court instructed the jury that "[n]otice to an attorney of a court date is notice to the client and knowledge of the attorney is knowledge of his client." In Blackbird, this Court analyzed a virtually identical jury instruction, and held that it was reversible error to so instruct the jury. I cannot join with the majority, which recognizes that the instruction given in Blackbird is "in substance, identical to the one at issue here" and that "the instruction should not have been given," yet holds that it was "harmless in the context of this case." As we held in Blackbird:

> As a conclusive or mandatory presumption, the instruction had the effect of relieving the State of its burden to prove every element of the offense beyond a reasonable doubt. The inclusion of the instruction obviated the necessity for the jury to independently examine the mental state or the intent or purpose of the defendant. The giving of the instruction was, therefore, error.

Blackbird, 609 P.2d at 710. Section 45-7-308(1), MCA, sets forth the offense of bail-jumping:

> A person commits the offense of bail-jumping if, having been set at liberty by court order, with or without security, upon condition that he will subsequently appear at a specified time and place, he purposely fails without lawful excuse to appear at that time and place. [Emphasis added.]

Clearly, to purposely fail to appear at a time and place, the defendant must have notice of the time and place. Thus, notice was an element to be proven, not, as the majority infers, a defense that the defendant has to raise. The effect of the instruction was to shift to Wereman the burden of proving lack of notice instead of

12

keeping the burden on the prosecution, where the burden of proof must remain as to every element of the offense. Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. I find it troubling that the majority recognizes that Blackbird prohibits this type of conclusive presumption instruction, yet holds that the giving of the instruction "was harmless in the context of this case."

In Blackbird, we found that the giving of an identical instruction was not harmless error even though the jurors "could have inferred [defendant's mental state] from other items of evidence introduced at trial, we cannot declare beyond a reasonable doubt that all of the jurors formulated defendant's mental state this way." Wereman testified that he did not appear because the charges lacked merit and would be dropped. From this statement, the majority infers that notice was not an issue. I disagree. Whether Wereman raises the issue or not, notice remains an element of the offense of bail-jumping. The instruction relieved the State from its burden of proof on an element of the offense. Even though Wereman said nothing about lack of notice, that does not relieve the State from proving every element of the offense. As a result, I would reverse the District Court on this issue.

_W. William Deyphart_
Justice

13

Justice Karla M. Gray joins in the foregoing dissent of Justice W. William Leaphart.

_____
                Justice