## Norfolk

EVELYN SUE WYMER

v.

COMMONWEALTH OF VIRGINIA

No. 0662-90-1

Decided April 9, 1991

COUNSEL

Joseph M. DuRant (Patten, Wornom & Watkins, on briefs), for appellant.

Leah A. Darron, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—Evelyn Sue Wymer (appellant) appeals from her bench trial conviction by the Circuit Court of the City of Williamsburg and James City County (trial court) for possession of cocaine. She asserts that the trial court erred (1) when it refused to admit into evidence the criminal record of her brother-in-law, Daniel Wymer (Daniel); (2) when it held that ownership of a residence, in which drugs and related drug paraphernalia were found in her bedroom dresser, jewelry box, bedroom closet, in a vase in her living room and in her purse, was sufficient to prove possession of the cocaine found in the residence; (3) when it admitted evidence of marijuana and paraphernalia for its use and use of either marijuana or cocaine as supporting proof of the charge that she possessed cocaine; and (4) when it admitted evidence of drug dealing in the Forest Glen area of James City County in which her residence was located.

■ On appeal, the judgment of the trial court is presumed correct. *Daley v. Commonwealth*, 132 Va. 621, 622, 111 S.E. 111, 111 (1922). In reviewing that record, we consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Boykins v. Commonwealth*, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969). When the sufficiency of the evidence is attacked, the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed unless plainly wrong or without evidence to support it. *Granberry v. Commonwealth*, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946); Code § 8.01-680.

On October 13, 1989, pursuant to information given him, James City County police officer Linhart procured a warrant to search the premises owned by appellant and her husband, Donald Ray Wymer (Donald), located in the Forest Glen area of James City County. When Linhart arrived to search the premises he found the doors locked, windows secured and no one at home. Approximately one-half hour later, appellant and Donald arrived. Linhart advised them that, pursuant to the warrant, he had entered the house.[1] Before proceeding further, Linhart read *Miranda* rights to appellant and Donald. Thereafter, they told him that they were the only occupants of the house. They were asked to remain in the living room as Linhart proceeded to search the premises.

In and on top of appellant's dresser, in a bedroom shared by appellant and Donald, Linhart found assorted evidence of drug use. Based on his experience as a narcotics investigator, at trial he explained the use and purpose of each item he discovered. On top of the dresser was a jewelry box which contained two short bent straws with cocaine residue. The ends of the straws had been blackened by heat. He explained that these straws are typically used to heat and inhale cocaine into the user's nostrils. In a dresser drawer, Linhart found a brass pipe and a leather and wood pipe of the type commonly used to smoke marijuana or cocaine. In addition, inside the dresser Linhart discovered a clear plastic baggie, bound by a short twist tie, which held a white powder substance. Linhart testified that the baggie was the typical manner in which cocaine was packaged for distribution in the James City County area and that in the area recently a substance

---

[1] In this appeal appellant does not contest the validity of the warrant or the search made pursuant thereto.

packaged in that manner had been sold as cocaine but was not.

In a closet in a second bedroom, inside a bag containing wedding and honeymoon memorabilia of appellant, Linhart found: three broken bowl pipes, a marijuana leaf imprint, two single edge razor blades, two additional plastic baggies containing a white powder residue, forty-six twist ties, another short bent straw, a glass bottle with marijuana residue and a metal wire clip charred at the end. Linhart explained that the razor blades were of the type used to cut cocaine and form it into lines which could be "snorted" into the nostrils by heating and using the short bent straws; that the baggies and twist ties were of the type used in the James City County area to package and distribute cocaine; and that the wire clip was of the type used to hold and smoke marijuana cigarettes.

In a vase located in the living room next to the sofa on which appellant and Donald had been sitting, Linhart found two additional short bent straws, each containing cocaine residue. When asked to explain the presence of the drug-related items, appellant told Linhart that her brother-in-law, Daniel, had "planted" all the above items in their house because two weeks earlier he had been forced to leave their home in which he had resided with his girlfriend for approximately six months.

Appellant asked Linhart to let her obtain cigarettes from her purse outside in her car. Linhart retrieved her purse but looked inside before giving it to her. In the purse were a marijuana smoking device, a wooden box and brass pipe, forceps with charred ends, cigarette papers and another short bent straw with cocaine residue.[2] Linhart then asked appellant, "Well, how do you explain this? The same things are in your pocketbook that I found in the house that you say were planted here." Appellant did not respond to that question.

At trial, appellant objected to the introduction of any evidence relating to marijuana on the ground that she was charged only with possession of cocaine.

---

[2] Linhart explained that cigarette papers were used to make marijuana cigarettes and that the forceps were used to light and hold the marijuana cigarettes as they are smoked.

In support of their claim that Daniel had "planted" the contraband at their house, appellant and Donald testified that there was animosity between Daniel and themselves; that he had threatened to have their house raided; and that he chased her down the road in a car pursuant to a threat that he was going to kill her.[3] Appellant sought to introduce Daniel's criminal record, but the trial court refused to accept it as evidence. She denied knowledge of any of the contraband and claimed the forceps were used to pick ticks from her cat and for clipping candle wicks. She could not explain the presence of the straw in her purse but asserted that she learned later that, without her knowledge, her husband had placed the brass pipe therein for the purpose of returning it to its owner who lived in Richmond.

Donald testified that he had trouble with Daniel; that he knew nothing of the contraband found in his house; and that Daniel was capable of planting the drugs in his house. He also said that he had placed the pipe in his wife's purse but gave no explanation for the other items contained therein.

At trial, appellant offered the documented criminal record of Daniel. Although Daniel and Donald are brothers whose parents lived nearby, and Donald admitted he knew where Daniel could be found, appellant made no attempt to have Daniel testify at her trial. Appellant sought to convince the trial court, without direct evidence to that effect, that Daniel had "planted" the drugs at places where they were found and then gave information to the police that caused the search warrant to be issued. Appellant's evidence concerning threats from Daniel was that he told them he would "have the cops at [appellant's] house," not that he would frame her. Appellant's sole defense to the charge that she unlawfully possessed cocaine is that Daniel, who formerly resided in the house with appellant and Donald, had been evicted by them and that he had threatened to "have [her] house raided." There was no evidence that he threatened to frame her or "plant" drugs on the premises. The trier of the fact could infer from the evidence that Daniel, who had lived in appellant's house for six months prior to two weeks before her arrest, was aware of the presence of drugs, drug paraphernalia and the drug habits of appellant and

---

[3] Evelyn claimed she saw a policeman and pulled to the side of the road to seek his help. The officer rebutted her testimony, saying that he stopped her because she was speeding and she claimed her *husband* was chasing her.

Donald, and that this knowledge was the basis for the threat to have their house searched by the police.

The more appellant attempted to explain the presence of the drugs and drug paraphernalia, the more her account appeared unlikely. For example, she asserted that Daniel threatened to kill her and chased her along a highway in a car until she sighted a policeman and sought his intervention. The officer called to testify on appellant's behalf testified that she stated it was her husband chasing her.

Citing C. Friend, *The Law of Evidence In Virginia* § 45 (3d ed. 1988), appellant argues that the character of third persons may become relevant to an action being tried. Appellant asserts that while she has no direct proof that Daniel (a third person) planted the evidence used against her, he was angry enough to have done so and, therefore, his prior convictions and use of drugs was admissible as substantive evidence as proof that he in fact did plant the accusative evidence. The trial court refused the evidence and we affirm that ruling.

The example given by Professor Friend of when such evidence may be admissible is the character of a homicide victim when the accused interposes self defense as a defense. Professor Friend states that in a "proper case" logic would not prohibit the introduction of such evidence. It is clear that, if by direct testimony of the accused, the defense to a homicide is self defense, the evidence of the victim's violent character may well be admissible. However, if the accused in such cases fails to present direct evidence that the decedent actually was attacking the defendant, evidence of his character would be irrelevant. Here, neither appellant nor Donald offered any such direct testimony of Daniel's alleged plot. Threats to kill or have the police raid their house is not direct evidence that he intended to or planted drugs and drug-related paraphernalia in appellant's home. There has been no abuse of the trial court's discretionary powers to reject that evidence.

We need not address appellant's argument that the evidence of Daniel's convictions was admissible pursuant to the provisions of Code § 8.01-389(A) because that issue was not presented to the trial court and may not for the first time be presented on appeal. *See* Rule 5A:18.

Appellant further argues that the evidence was insufficient to prove that she constructively possessed drugs. We disagree. Proof is required that the accused was aware of both the presence and character of the substance and that it was subject to his or her dominion and control. *Drew v. Commonwealth*, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986). Possession, however, need not be exclusive; it may be shared. *Archer v. Commonwealth*, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983). Although proof that cocaine is found on the premises owned by an accused is insufficient, standing alone, to prove constructive possession, such evidence is probative of possession and is a circumstance which may be considered along with other evidence. *Hodge v. Commonwealth*, 7 Va. App. 351, 358, 374 S.E.2d 76, 80 (1988). While awareness is an essential ingredient in the crime of possession of narcotics, it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics in the place where they were found. *Ritter v. Commonwealth*, 210 Va. 732, 741, 173 S.E.2d 799, 806 (1970).

For at least two weeks prior to their arrests, appellant and Donald were the exclusive occupants of the house in which numerous items related to drug use were found. On top of appellant's bedroom dresser in her jewelry box were found bent straws used to inhale cocaine, each containing cocaine residue. In a drawer in the dresser, Linhart found a brass pipe of the type used to smoke cocaine and marijuana. A similar brass pipe was found in her purse. In a closet in a second bedroom Linhart found a bag containing wedding and honeymoon memorabilia belonging to appellant. Also in the bag were assorted items commonly used in the packaging and consumption of cocaine and marijuana, including razor blades commonly used to cut and form lines of cocaine which may be inhaled through the bent straws. Finally, in the living room in a vase near where appellant and Donald sat while the search was being conducted, Linhart found more bent straws which contained cocaine residue. The foregoing constitutes abundant evidence from which the trial court could reasonably have inferred that appellant was aware of the presence of cocaine.

Most of the objected to marijuana evidence was found in the same place in the same containers as the evidence relating to the cocaine was found. Where there was evidence of one, there was

evidence of the other. Moreover, in addition to the evidence of cocaine found in the house, there was evidence of cocaine found in appellant's purse. Again, that container held a mixture of marijuana and cocaine paraphernalia and cocaine residue. Inside appellant's purse were a bent straw containing cocaine residue, a brass smoking device, cigarette papers commonly used to roll marijuana cigarettes, forceps with charred ends also commonly used to hold a marijuana cigarette while it is being lighted and smoked, a wooden box and a brass pipe of the type used to smoke either marijuana or cocaine. When asked for an explanation, appellant and Donald gave none.

■ "Evidence which bears upon and is pertinent to matters in issue, and which tends to prove the offense, is relevant and should be admitted." *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Whether appellant knew illegal drugs were present in her purse and house was an issue. The bent straw with cocaine residue found in her purse along with the paraphernalia used to consume marijuana are sufficiently related to the items found in or on appellant's dresser and are additional facts which permitted the fact finder to infer that appellant knew of the presence of cocaine. Linhart testified that the brass pipe he found in her purse and another in her dresser drawer which contained burnt residue "are very commonly used in pipes . . . to smoke both marijuana and cocaine . . . both drugs are smoked in pipes similar to these . . . and that . . . the metal and brass pipes are used for smoking cocaine because . . . crack cocaine . . . requires a lot of direct and constant heat to smoke it, and therefore, you need a heavy duty smoking device to withstand the heat. . . ." All the evidence admitted tends to prove appellant's awareness of the cocaine found in her purse and house, and was admissible to prove an essential issue before the trial court.

Where a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence "sanitized" so as to deny the jury knowledge of all but the immediate crime for which he is on trial . . . even though [it] may show the defendant guilty of other offenses.

*Scott v. Commonwealth*, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984).

Linhart's testimony concerning the sale of drugs in the Forest Glen area related to the baggie containing a white powder with tie twists. The white powder found in that baggie could not be identified as cocaine. The Forest Glen area testimony was offered merely to show that a great number of sales in that area which had been packaged in that manner subsequently proved to be harmless white powder, just like the contents of this particular baggie. This testimony was not irrelevant.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Moon, J., and Willis, J., concurred.