## Norfolk

MARCEL LEVATINO HARMON

v.

COMMONWEALTH OF VIRGINIA

No. 1956-90-1

Decided December 15, 1992

COUNSEL

Andrew M. Sacks (Sacks, Sacks & Imprevento, on brief), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Marcel Levatino Harmon (appellant) appeals from his bench trial conviction by the Circuit Court of the City of Virginia Beach (trial court) for possession of cocaine. He asserts that the trial court erred in failing to suppress the evidence of cocaine found in his car pursuant to a warrantless search, and further alleges that the evidence was insufficient to prove that he knowingly and intentionally

possessed cocaine. Upon familiar principles, we state the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

On July 18, 1989, Tyrone Anthony Holland, a person familiar with illegal drug trafficking, received a telephone call from Kevin Ackiss, in which Ackiss advised him that he "could set up half a kilo deal." At the time, Holland was under indictment for unlawful distribution of drugs. Seeking favor from the police by cooperating with them, Holland called Detective Dennis Santos, a member of the Virginia Beach Police Department Special Investigating Unit (SIU), and advised him of the call from Ackiss. Holland agreed to be wired with a body transmitter, meet Ackiss and pretend to purchase the cocaine. Arrangements were then made with Ackiss to conduct the transaction from a Cadillac Seville in the parking lot of a Red Roof Inn in Virginia Beach.

Holland was fitted with the transmitter and taken to the lot, where several SIU officers, all experienced in narcotics investigations, were stationed in and around its perimeter. The Cadillac, with Ackiss as a passenger, was driven onto and around the lot several times before it was parked near the building. Holland walked to the Cadillac and had a brief conversation with Ackiss, during which Ackiss told Holland that "his boys was [sic] watching him in another car." When Ackiss displayed the cocaine, Holland gave the prearranged signal to the SIU detectives that the cocaine was present. Advising Ackiss that he would have to get the money to pay for the drugs, Holland left the area of the Cadillac, and as he walked away, he advised the police, over the wire, that there were two vehicles involved.

In response to the signal, Santos and Detective Lawrence moved to the Cadillac to arrest Ackiss. When they arrived, a third person, Emmett Jefferson, was standing at the side of the Cadillac leaning in the window. The driver, Ackiss and Jefferson were arrested. Jefferson had in his possession a digital pager and a large sum of money. Cocaine, weighing approximately seventeen ounces, was found inside the Cadillac.

Detective R. W. Bishop had been stationed in a wooded area adjacent to the parking lot. He had seen several cars come onto the lot and immediately park; however, when the Cadillac entered the lot, it was

driven around the lot several times before being parked. A few minutes after the Cadillac arrived, he saw an Oldsmobile with two men in it come onto the lot, drive around several times and then park. From his position, Bishop observed another man, later identified as Emmett Jefferson, exit the Oldsmobile, stand in the middle of the lot, look around, jog slowly through the lot, pass in the area of the Cadillac, look around again, run up to the second floor parking area, look around, return to the lower level lot and go over to the Cadillac, which was the "target vehicle." At this time, the "take-down signal" was received.

As Bishop and Detective Brown ran toward the Cadillac, Bishop observed the Oldsmobile start to depart the lot, its tires "squealing" as it went around the building. Appellant, then alone in the car, was its driver. When Bishop saw the Oldsmobile attempt to leave the lot as the "take-down" was about to occur, he instructed the other SIU members to stop the car. The passage of the Oldsmobile was blocked.

Bishop's brother, Tom, also a member of this SIU team, was outside the parking lot driving toward the target Cadillac when he was told the "take-down" signal had been given. Tom heard Bishop yell "get the vehicle" and point in the direction of the Oldsmobile. Tom saw appellant backing the Oldsmobile out of the lot and "squealing the tires" as it rounded the building. Its passage was blocked by a vehicle operated by Officer Mullins. Tom explained his actions which followed:

> I walked over to the vehicle. He had his hands up, opened the car door and told him to step from the vehicle, grabbed his one arm to keep him from putting one arm down near his person. Right off the driver's side with the door still open, had him place his hands on the car.

> As I got into the rest of the vehicle to grab his hands, I noticed a plastic bag —just a portional [sic] part of the plastic bag . . . .

> It was sticking out from underneath the driver's back right where he was sitting. At that time Detective Zebley was right by me. At that time I advised Detective Zebley to clerk [sic] the vehicle for weapons plus also advised him I noticed a plastic baggie sticking out from underneath the seat. At that time I began to pat down for safety.

Zebley made a "sweep" search, found no weapon and removed the plastic bag which was "sticking out from underneath the seat." The bag contained a "chunk substance," later determined to be cocaine. In a pat-down search of appellant, a digital pager and $589.89 were found. Appellant was the only occupant of the vehicle when it was stopped and he was listed as the owner on the car title.

No evidence was presented on behalf of appellant. He was found guilty of possession of cocaine.

## I. SUPPRESSION

Appellant first argues that evidence of the cocaine seized from under the seat of his car should have been suppressed because the stop of his car was an arrest without probable cause. "The burden is upon [appellant] to show that [the trial court's refusal to suppress], when the evidence is considered most favorably to the Commonwealth, constituted reversible error." *Fore v. Commonwealth*, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, *cert. denied*, 449 U.S. 1017 (1980).

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145-46 (1972). *See also Howard v. Commonwealth*, 210 Va. 674, 173 S.E.2d 829 (1970). It is firmly established that a brief detention for investigative purpose is justified where an officer has reasonable suspicion supported by articulable facts that "criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Actual proof that criminal activity *is* afoot is not necessary; the record need only show that it *may* be afoot. *See Richards v. Commonwealth*, 8 Va. App. 612, 616-17, 383 S.E.2d 268, 271 (1989).

We recognize that, for Fourth Amendment purposes, "when [the] police stop an automobile and detain its occupant, this constitutes a 'seizure' of the person, even though the purpose of the stop is limited." *Leeth v. Commonwealth*, 223 Va. 335, 340, 288 S.E.2d 475, 478

(1982). However, the stop does not offend the Fourth Amendment if it is supported by a reasonable suspicion, based on objective facts, that the individual may be involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 51 (1979); *Baldwin v. Commonwealth*, 243 Va. 191, 195, 413 S.E.2d 645, 647 (1992). "There is no 'litmus test' for reasonable suspicion. Each instance of police conduct must be judged for reasonableness in light of the particular circumstances." *Castaneda v. Commonwealth*, 7 Va. App. 574, 580, 376 S.E.2d 82, 85 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "In order to determine what cause is sufficient to authorize police to stop a person, cognizance must be taken of the 'totality of the circumstances—the whole picture.'" *Leeth*, 223 Va. at 340, 288 S.E.2d at 478 (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)). The test is less stringent than the requirement of probable cause. *See Terry v. Ohio*, 392 U.S. at 27.

The totality of the evidence reveals that the police had reason to believe that the driver of the Oldsmobile may have been engaged in criminal activity. Based on the situation as it was known to the officers at the time, the stop for the purpose of obtaining more information was reasonable. Accordingly, it was not error for the trial court to refuse to suppress the evidence. We find that the stop of appellant was based on articulated facts which established reasonable suspicion that criminal activity was afoot.

Appellant further argues that even if the stop was legitimately made, nevertheless, the sweep search of his vehicle which resulted in the removal of the bag of cocaine exceeded the scope of the investigatory detention. We disagree. Appellant disregards relevant facts. The search did not discover the bag containing the cocaine. It was in plain view protruding from under the driver's seat, and not discovered by a search. Appellant was alone in the car when it stopped. The investigating officer was an experienced narcotics investigator with knowledge that drugs are generally packaged in such manner. The sweep search was limited for weapons under the seats. The officers explained that the sweep search was for weapons and to assure their safety.

■ "The Framers of the Fourth Amendment have given us only the general standard of 'unreasonableness' as a guide in determining whether searches and seizures meet the standard of that Amendment in those cases where a warrant is not required." *Cady v. Dombrowski*, 413 U.S. 433, 448 (1973). The cases have made clear, however, that when detention of the suspect is valid, such safety searches have long been held to comply with constitutional requirements. *Michigan v.*

*Long*, 463 U.S. 1032, 1046-52 (1983). *See also Maryland v. Buie*, 494 U.S. 325 (1990). No effort was made to proceed beyond the safety search and the suspicious package was in plain view.

Appellant argues that it was not reasonable to conclude that there may have been weapons in the car. This was a narcotics investigation of suspected dealers in a trade fraught with danger to the investigators.

> Although suspicion of narcotics possession and distribution is not universally recognized as a circumstance which, standing alone, gives rise to an inference of dangerousness, we believe that the better view is that it does. The Supreme Court implied as much in *Summers* when it stated: "[T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence."

*Williams v. Commonwealth*, 4 Va. App. 53, 67, 354 S.E.2d 79, 87 (1987) (citations omitted) *(quoting Michigan v. Summers*, 452 U.S. 692, 702 (1981)); *United States v. Post*, 607 F.2d 847, 851 (9th Cir. 1979). We find that appellant was validly detained and that the officers did not exceed the scope of that detention.[1]

## II. SUFFICIENCY

Appellant asserts "that mere operation of a motor vehicle in which a controlled substance is ultimately located [is not] sufficient evidence to convict a defendant of knowing and intentional possession of" the drug. We do not disagree with that premise; however, it is not accurate to contend that this record contains only evidence of "mere operation" of the car in which the cocaine was found. Here, the evidence discloses that a passenger left appellant's car and appeared to be conducting a counter-surveillance of the drug transaction the SIU detectives were monitoring; that as soon as the police officers made their appearance known by closing in on the Cadillac, appellant attempted to flee the lot in so swift a manner as to "squeal" the tires of his vehicle, giving the further appearance of a desire to escape with his contraband; that he was the owner of the vehicle in which the drugs were found, partially in plain view under the driver's seat where he sat

---

[1] Because we find that the police had reason to believe that criminal activity was afoot and thus were justified in temporarily detaining appellant, making the pat-down search of his person and the sweep search of his vehicle, it is not necessary that we address the issue of whether the police had probable cause to support their actions.

when his escape was blocked; and that he was the driver and sole occupant of the Oldsmobile when stopped. As noted above, we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. We hold that from the recited evidence the trial court could reasonably infer that Jefferson, who had been a passenger in appellant's car was one of "the boys" engaged in counter-surveillance for Ackiss and further to infer that appellant was the other and attempted to flee to avoid being found with the drugs.

In *Wymer v. Commonwealth*, 12 Va. App. 294, 403 S.E.2d 702 (1991), we acknowledged that to sustain a conviction for possession of drugs, the Commonwealth is required to prove the presence of the drug and that it was under the defendant's dominion and control. We then said:

> Although proof that cocaine is found on the premises owned by an accused is insufficient, standing alone, to prove constructive possession, such evidence is probative of possession and is a circumstance which may be considered along with other evidence. While awareness is an essential ingredient in the crime of possession of narcotics, it may be proved by evidence of acts, declarations or conduct of the accused from which the inference may be fairly drawn that he knew of the existence of the narcotics in the place where they were found.

*Id.* at 300, 403 S.E.2d at 706 (citations omitted). *See also Clodfelter v. Commonwealth*, 218 Va. 619, 622, 238 S.E.2d 820, 822 (1977). The requisite knowledge on the part of the accused may be proved by evidence of acts, declarations or conduct showing that he knew of the existence of narcotics at the place they were found. *Andrews v. Commonwealth*, 216 Va. 179, 182, 217 S.E.2d 812, 814 (1975). We find that the totality of the evidence contained in this record is sufficient to support the judgment of the trial court.

Accordingly, appellant's conviction for possession of cocaine in violation of Code § 18.2-250 is affirmed.

*Affirmed.*

Bray, J., and Fitzpatrick, J., concurred.