COURT OF APPEALS OF VIRGINIA


Present: Judges Felton, Kelsey and Senior Judge Willis
Argued at Richmond, Virginia


RICHARD EARL GILLARD

MEMORANDUM OPINION* BY
v.    Record No. 0037-02-2      JUDGE WALTER S. FELTON, JR.
AUGUST 19, 2003

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Oliver A. Pollard, Jr., Judge

Elliott B. Bender for appellant.

Steven A. Witmer, Assistant Attorney General
(Jerry W. Kilgore, Attorney General, on
brief), for appellee.


Richard Gillard was convicted in a bench trial of multiple

offenses stemming from two separate incidents. From the April 22,

1998 incident, he was convicted of (1) possession of marijuana, in

violation of Code § 18.2-250.1; (2) possession of cocaine, in

violation of Code § 18.2-250; (3) possession of a firearm while in

possession of drugs, in violation of Code § 18.2-308.4; and

(4) possession of a concealed weapon, in violation of Code

§ 18.2-308. From the May 5, 1998 incident, Gillard was convicted

of (1) possession of cocaine, in violation of Code § 18.2-250; and

(2) possession of cocaine while in possession of a firearm, in

violation of Code § 18.2-308.4. In addition to the April 22 and

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

May 5 offenses, Gillard was convicted on two counts of felony failure to appear, in violation of Code § 19.2-128.

On appeal, Gillard presents several assignments of error. First, he contends the evidence was insufficient to support his convictions for the April 22, 1998 offenses of possession of a controlled substance, possession of a gun while in the possession of a controlled substance, possession of a concealed weapon, and possession of marijuana. Second, he argues that the trial court erred in admitting evidence of his possession of illegal drugs and a weapon when the arresting officer did not have reasonable articulable suspicion to seize him and did not have probable cause or voluntary consent to conduct a search of him on May 5, 1998. Third, Gillard contends the trial court erred in admitting evidence of a controlled substance when the Commonwealth failed to sufficiently establish the chain of custody of the drugs in question. Furthermore, he asserts the trial court abused its discretion by not allowing Sergeant Jones to testify regarding his observations of the procedures for checking evidence into and out of the police property room. Lastly, he argues that the evidence was insufficient to support his conviction on November 16, 1998 for felony failure to appear.

For the following reasons, we affirm the judgment of the trial court.

## I.   BACKGROUND

### A.   APRIL 22, 1998 OFFENSES

At 9:30 p.m. on April 22, 1998, Petersburg Police Officer Rick Crimonese observed a vehicle, driven by Richard Gillard, run a stop sign.  Officer Crimonese stopped the vehicle.  He approached it on the passenger side and asked the passenger, Tito Coleman, to pass over Gillard's driver's license.  Officer Crimonese noted a strong odor of marijuana emanating from the vehicle.

With Gillard's driver's license in hand, he returned to his patrol car and ran a check on the license.  Officer Crimonese then wrote a summons for the stop sign violation.  Officer Crimonese returned to Gillard's car and gave him the summons. He also told Gillard that he smelled a strong odor of marijuana coming from the vehicle and asked him if he had any weapons or illegal narcotics in his car.  Gillard responded, "No."

Officer Crimonese asked Gillard to get out of the car, brought him to the rear of the vehicle, and asked permission to conduct a pat-down frisk.  During the frisk, he discovered a large bulge in Gillard's right front pants pocket.  Officer Crimonese asked Gillard to remove the object, which was six hundred and sixty-six dollars in U.S. currency.

As a result of the strong odor of marijuana he previously noted coming from inside the car, Officer Crimonese searched the vehicle.  During the course of the search, he found a loaded

handgun under the driver's seat.  He then placed Gillard under arrest for possessing a concealed weapon.

Following the arrest, Officer Crimonese completed the search of the vehicle.  He recovered from the center console quantities of a white powder, later determined to be cocaine, and a green plant-like substance, later determined to be marijuana.

Officer Crimonese placed the drugs and gun in a property locker at 1:20 a.m. on April 23, 1998.  The drugs and gun were removed from the locker later the same day by Detective J.D. Thomas and placed in the police headquarters' evidence room.  An officer in the evidence room subsequently assigned an inventory control number to the items.

### B.  MAY 5, 1998 OFFENSES

At approximately 2:40 a.m. on May 5, 1998, Sergeant E.S. Jones of the Petersburg Police Department observed a speeding taxicab and initiated a traffic stop.  The traffic stop was conducted in a high crime area of the city.  The cab driver was upset when Sergeant Jones approached.  The cab driver immediately informed him that some unknown individuals "bailed out" of his cab without paying.  Sergeant Jones began questioning the remaining two passengers, Gillard and Coleman, in an attempt to identify the people who jumped out of the cab.

Sergeant Jones did not recognize Gillard.  Coleman was asked his name, but he provided a name of someone else that

- 4 -

Sergeant Jones knew well.  He then recognized Coleman.  Knowing that Coleman was wanted on outstanding felony warrants, Sergeant Jones drew his service weapon and took him into custody.  At that moment another police unit arrived on the scene.  Thereafter, Sergeant Jones asked Coleman the identity of the other person in the cab.  Coleman responded, "I can't tell you who he is.  You know I can't do that.  I can't tell you who he is."

As a result of Coleman's response, Sergeant Jones walked back to the taxicab and asked Gillard if he could speak to him.  He responded affirmatively.  Sergeant Jones then asked Gillard for identification and informed him he was going to "run" the information to determine if he had any outstanding warrants.  Gillard provided him with a Virginia State University identification card.  From his portable radio, Sergeant Jones radioed to a dispatcher the information found on the identification card.

Knowing that Coleman had carried weapons in the past and considering that Gillard was with Coleman, Sergeant Jones became concerned Gillard might be carrying a weapon.  As a result, he asked Gillard if he was carrying a weapon.  Gillard responded, "No."  Sergeant Jones then asked Gillard to step out of the vehicle so that he could pat him down for his safety.  Gillard stepped out of the taxicab and stated, "Officer, I've got [sic] something I need to tell you.  Officer, I have a gun."

- 5 -

Sergeant Jones then handcuffed Gillard and conducted a pat-down frisk for weapons. A loaded .38 caliber handgun was discovered in his coat. Gillard was then placed under arrest for carrying a concealed weapon and transported to the Petersburg City Jail. Once there, Gillard was read his <u>Miranda</u> rights. A further search incident to the arrest revealed several bags of cocaine in Gillard's possession.

Sergeant Jones packaged and sealed the drugs and placed them, along with the gun, in a secure evidence locker at police headquarters on May 5, 1998, the same day the evidence was seized from Gillard. He also prepared a laboratory submission request to the forensics lab. An inventory control number was assigned to the drugs and gun by the evidence room officer.

C.   <u>EVIDENCE SUBMISSION TO FORENSICS LABORATORY</u>

On May 6, 1998, the drugs seized from Gillard on April 22 and May 5, 1998, were removed from the evidence room by the Petersburg Police Department and transported to the state forensics laboratory for testing. Upon receipt of the drugs from the police, the state laboratory assigned them forensic science laboratory control numbers. The drugs remained at the laboratory until June 25, 1998, when they were returned to the police evidence room. The certificates of analysis reflected that the results of the items tested matched the items submitted for testing, based on the inventory control and forensic science laboratory control numbers assigned.

- 6 -

## D.   EVIDENCE ROOM OPERATION

At trial, Gillard recalled Sergeant Jones as a defense witness and attempted to question him regarding the internal operations of the police evidence room and evidence handling procedures.  The Commonwealth repeatedly objected to Sergeant Jones' testimony, and the trial court sustained some objections, narrowed some, and overruled others.  The trial court finally halted the questioning of Sergeant Jones regarding the internal procedures of the evidence room, stating:

> He can testify as to what is proper in terms of his training and how he puts it [sic] the property into a locker and what he knows about checking it in and out.  I am not going to let him get into the internal procedures of the property [room].
>
> *    *    *    *    *    *    *
>
> He has told you:  I'm not familiar with the internal procedures of the property [room].
>
> *    *    *    *    *    *    *
>
> You're trying to equate what a line officer does in putting it in the locker and if he wants to check it back out of the property [room] for court or different purposes.  You are trying to equate that procedure with what the property officer does for taking it out and taking it to the lab.  And that's not appropriate.

Gillard asked the trial court to allow him to proffer for the record what Sergeant Jones might possibly testify to regarding his knowledge of the procedures and his observations.  However, the trial court ruled the proffer improper as only

- 7 -

being speculative as to what Sergeant Jones' testimony "might possibly be."

E.   <u>FAILURE TO APPEAR</u>[1]

On November 16, 1998, Gillard was recognized to appear in the Petersburg General District Court for a preliminary hearing stemming from the April 22, 1998 offenses.  He failed to appear on that date, and a warrant for his arrest was issued on the same day.  Brenda Simmons, deputy clerk for the general district court, testified on February 20, 2001 that the Petersburg General District Court records reflected that Gillard was recognized on bond to be present in that court on November 16, 1998 for a preliminary hearing on the felony warrants arising out of the April 22, 1998 incident.[2]  She further testified that the records reflected that Gillard failed to appear in court that day and that the judge ordered a felony failure to appear warrant be issued that same date.  Ms. Simmons also testified that she could not recall whether Gillard was in court on

---

[1] Gillard was convicted of two counts of failure to appear. On October 29, 1998, he failed to appear in court for a scheduled hearing.  He subsequently pleaded guilty to that charge.  On November 16, 1998, Gillard again failed to appear in court for a scheduled hearing and was subsequently convicted. Gillard challenges the conviction for his November 16, 1998 failure to appear.

[2] Ms. Simmons testified that on November 16, 1998 she made a note on Gillard's April 22, 1998 warrant for arrest for possession of cocaine with the intent to distribute that he failed to appear on November 16, 1998.  Additionally, she testified that the district court judge noted on that document that Gillard failed to appear on that date.

November 16, 1998.  However, she did testify that the court records, which she authenticated, did reflect Gillard failed to appear on November 16, 1998.

## II.  ANALYSIS

### A.  APRIL 22, 1998 OFFENSES:  SUFFICIENCY OF EVIDENCE

We first consider whether the evidence was sufficient to support Gillard's convictions for the April 22, 1998 offenses.

> When the sufficiency of the evidence is
> challenged on appeal, it is well established
> that we must view the evidence in the light
> most favorable to the Commonwealth, granting
> to it all reasonable inferences fairly
> deducible therefrom.  The conviction will be
> disturbed only if plainly wrong or without
> evidence to support it.

Jones v. Commonwealth, 13 Va. App. 566, 572, 414 S.E.2d 193, 196 (1992).

On the evening of April 22, 1998, Officer Crimonese stopped Gillard for running a stop sign.  Officer Crimonese noted a strong odor of marijuana emanating from Gillard's car when he approached.  After issuing Gillard a summons, Officer Crimonese began to investigate further the source of the marijuana odor. He asked Gillard to step out of the car.  Officer Crimonese obtained permission to conduct a pat-down frisk, which yielded six hundred and sixty-six dollars in U.S. currency.  He then conducted a search of Gillard's car from which the marijuana odor emanated.  The search yielded a loaded handgun from under the driver's seat.  Gillard was arrested for possession of a

- 9 -

concealed weapon.  Incident to the arrest, a further search of the car resulted in the recovery of cocaine and marijuana from the center console.

"In determining whether a defendant constructively possessed a firearm, the defendant's proximity to the firearm and his occupancy and ownership of the vehicle must also be considered."  Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 369 (1994) (en banc).  Officer Crimonese possessed probable cause to search Gillard's vehicle based on the odor of marijuana he smelled.  During the search of Gillard's vehicle, he found a gun under the driver's seat.  Although Coleman was left alone for a brief time period in the vehicle when Officer Crimonese conducted a pat-down of Gillard, Officer Crimonese testified that two other officers talked with Coleman while he was talking with Gillard at the rear of Gillard's car.  The other officers arrived shortly after Gillard got out of his car. There was no indication in the record of any furtive movements by Coleman toward the driver's seat at any time during the stop. From this evidence, the trial court could have reasonably concluded that Gillard was aware of the presence and character of the gun under the driver's seat of his car which he was driving, and because of its proximity to Gillard, it was subject to his dominion and control.

In addition to the discovery of the gun, marijuana and cocaine were discovered in the vehicle's center console located

- 10 -

between the driver and passenger seats.  To support a conviction based upon constructive possession of drugs, "the Commonwealth must point to evidence of acts, statements or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control."  Glasco v. Commonwealth, 26 Va. App. 763, 774, 497 S.E.2d 150, 155 (1998) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984)).  While ownership or occupancy of a motor vehicle in which illegal drugs are found does not create a presumption that the owner or occupant possessed the drugs,

> "[o]wnership or occupancy of a vehicle or of premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items in the vehicle or on the premises in order to prove that the owner or occupant constructively possessed the contraband.  Furthermore, proof that a person is in close proximity to contraband is a relevant fact that, depending on the circumstances, may tend to show that, as an owner or occupant of property or of a vehicle, the person necessarily knows of the presence, nature and character of a substance that is found there."

Logan, 19 Va. App. at 444, 452 S.E.2d at 369 (quoting Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992)).

- 11 -

As previously noted, the record reflects no furtive movements by Coleman from the time of the traffic stop until the drugs were found in the center console. The two officers spoke with Coleman while Officer Crimonese conducted a safety pat-down of Gillard. During the pat-down, six hundred and sixty-six dollars in U.S. currency was discovered in Gillard's pocket. Combined with the odor of marijuana emanating from the vehicle and the proximity of Gillard to the center console in his car, the trial court could have reasonably concluded beyond a reasonable doubt that Gillard was aware of the presence and character of the drugs found in the console and that he exercised dominion and control over them. The evidence was sufficient to find Gillard guilty beyond a reasonable doubt for his unlawful possession of a controlled substance, unlawful possession of a gun while in possession of a controlled substance, possession of a concealed weapon, and possession of marijuana on April 22, 1998.

### B. MAY 5, 1998 OFFENSES: VOLUNTARY CONSENT, REASONABLE SUSPICION, PROBABLE CAUSE

We next consider whether the trial court erred in admitting evidence of drug possession and possession of a gun relating to Gillard's May 5, 1998 offenses. "In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that th[e] ruling, when the evidence is considered most favorably to the Commonwealth, constituted

reversible error.'" McGee v. Commonwealth, 25 Va. App. 193,

197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted).

"[W]e review de novo the trial court's application of

defined legal standards such as probable cause and reasonable

suspicion to the particular facts of the case." Hayes v.

Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999)

(citation omitted). "In performing such analysis, we are bound

by the trial court's findings of historical fact unless 'plainly

wrong' or without evidence to support them and we give due

weight to the inferences drawn from those facts by resident

judges and local law enforcement officers." McGee, 25 Va. App.

at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517

U.S. 690, 699 (1996)).

Gillard argues that the arresting officer, Sergeant Jones,

did not have a reasonable articulable suspicion to seize him and

did not have probable cause or voluntary consent to conduct a

search of him. We disagree.

> "Fourth Amendment jurisprudence recognizes
> three categories of police-citizen
> confrontations: (1) consensual encounters,
> (2) brief, minimally intrusive investigatory
> detentions, based upon specific, articulable
> facts, commonly referred to as Terry stops,
> and (3) highly intrusive arrests and
> searches founded on probable cause."
> Wechsler v. Commonwealth, 20 Va. App. 162,
> 169, 455 S.E.2d 744, 747 (1995) (citation
> omitted).

> "A consensual encounter occurs when police
> officers approach persons in public places
> 'to ask them questions,' provided 'a

- 13 -

reasonable person would understand that he or she could refuse to cooperate.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (citations omitted). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980).

Piggott v. Commonwealth, 34 Va. App. 45, 48-49, 537 S.E.2d 618, 619 (2000).

In contrast, even a brief detention for investigative purposes constitutes a seizure contemplated by the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968). "In order to justify such a seizure, an officer must have a 'reasonable and articulable suspicion of criminal activity on the part of the defendant . . . .' A general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him . . . articulate a reasonable basis for his suspicion." Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992) (citations omitted). "[W]hen a court reviews whether an officer had reasonable suspicion to make an investigatory stop, it must view the totality of the circumstances . . . objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989) (citation omitted).

Armed with the requisite suspicion, an officer may stop a person "'in order to identify him, to question him briefly, or to detain him briefly, while attempting to obtain additional information.'" DePriest

- 14 -

> v. Commonwealth, 4 Va. App. 577, 585, 359
> S.E.2d 540, 544 (1987), cert. denied, 488
> U.S. 985, 109 S. Ct. 541, 102 L. Ed. 2d 571
> (1988) (quoting Hayes v. Florida, 470 U.S.
> 811, 816, 105 S. Ct. 1643, 1647, 84
> L. Ed. 2d 705 (1985)).  However, police
> procedures and investigative methods
> attendant to the detention must be
> calculated to confirm or dispel the
> suspicion quickly and with minimal
> intrusion.  Thomas v. Commonwealth, 16
> Va. App. 851, 856-57, 434 S.E.2d 319, 323
> (1993).

Wechsler v. Commonwealth, 20 Va. App. 162, 170-71, 455 S.E.2d

744, 748 (1995).

In viewing the totality of the circumstances, Gillard was

not subject to an unlawful seizure by Sergeant Jones.  From the

outset, Sergeant Jones' encounter with the occupants of the

taxicab was lawful.  The taxicab was lawfully stopped for

speeding.  The taxi driver immediately informed Sergeant Jones

about "fare-jumpers" from his taxi.[3]  Sergeant Jones properly

began questioning the cab driver, Gillard, and Coleman regarding

the identities of the "fare-jumpers."

During this conversation, Sergeant Jones recognized Coleman

as a person who had outstanding warrants against him.  Sergeant

Jones lawfully arrested Coleman on the outstanding warrants and

placed him in his patrol car.  He then questioned Coleman as to

---

[3] Fare-jumpers are individuals who acquire the services of a taxi and jump out without paying the fare upon reaching their destination.

Gillard's identity.  Coleman responded, "I can't tell you who he is.  You know I can't do that.  I can't tell you who he is."

The surrounding circumstances of the "fare-jumpers" and Coleman's response as to Gillard's identity gave rise to a reasonable suspicion that criminal activity might be afoot, thus warranting an investigatory detention of Gillard in order to identify him and to obtain additional information from him. "For an investigatory stop, officers need only articulate a reasonable suspicion that criminal activity 'may be afoot.'" Barkley v. Commonwealth, 39 Va. App. 682, 691, 576 S.E.2d 234, 238 (2003) (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)).  Actual proof that criminal activity is afoot is not necessary, only that it may be afoot.  Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992).

When Sergeant Jones approached Gillard, who was sitting in the front seat of the taxicab, he asked Gillard if he could talk with him.  Gillard responded, "Yes."  Sergeant Jones then requested identification information from Gillard to permit the officer to determine if there were outstanding warrants against him.  Gillard voluntarily produced his Virginia State University identification card.  Sergeant Jones radioed the information to police dispatch while he stood next to Gillard.  The record check returned no outstanding warrants.

Sergeant Jones asked Gillard if he had any weapons on him. He responded, "No."  Sergeant Jones then asked, "Can I get a pat

down on you for weapons?" Gillard responded, "Okay," and voluntarily stepped out of the taxicab. Gillard then stated, "Officer, there's something I need to tell you. . . . Officer, I have a gun on me." Gillard's voluntary statement during a lawful investigatory detention provided Sergeant Jones with probable cause to search him for a weapon. During that search, Sergeant Jones found a gun. Incident to the subsequent lawful arrest for possession of a concealed weapon, drugs were also found. The trial court did not err in admitting evidence of Gillard's drug possession and possession of a gun relating to the May 5, 1998 offenses.

## C. CHAIN OF CUSTODY

We next consider whether the trial court erred in admitting evidence of a controlled substance in relation to the April 22, 1998 and May 5, 1998 offenses on the grounds that there was a break in the chain of custody. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994).

> When the Commonwealth offers testimony concerning the physical or chemical properties of an item in evidence, or of any foreign matter found on the item, authentication requires proof of the chain of custody, including "a showing with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would

affect the results of the analysis."
Washington v. Commonwealth, 228 Va. 535,
550, 323 S.E.2d 577, 587 (1984), cert.
denied, 471 U.S. 1111, 105 S. Ct. 2347, 85
L. Ed. 2d 863 (1985).  "[T]he requirement of
reasonable certainty is not met when some
vital link in the chain of possession is not
accounted for, because then it is as likely
as not that the evidence analyzed was not
the evidence originally received."  Robinson
v. Commonwealth, 212 Va. 136, 138, 183
S.E.2d 179, 180 (1971) (emphasis omitted).

Reedy v. Commonwealth, 9 Va. App. 386, 387-88, 388 S.E.2d 650, 650-51 (1990).

The Commonwealth established with reasonable certainty that there was no break in the chain of custody and that the controlled substances seized from Gillard on April 22 and May 5, 1998, were not altered, substituted, or contaminated prior to analysis.

Regarding the drugs seized in the late evening on April 22, 1998, testimony at trial established that Officer Crimonese placed the drugs in a secure property locker in the early morning hours of April 23, 1998.  On the same day, Detective J.D. Thomas removed the drugs from the secure property locker. He transferred the items to the police headquarters' evidence room where they were assigned an inventory control number.  The drugs were not removed from the evidence room until May 6, 1998, when Detective Thomas and Officer Thomas Lauter transported them to the state forensics laboratory for testing.  The state forensics laboratory assigned a laboratory control number upon

- 18 -

receipt of the items from the police officers.  The drugs remained in the lab until June 25, 1998 when they were returned to the Petersburg Police Department and secured in the police headquarters' evidence room.  The certificate of analysis, dated May 27, 1998 and admitted into evidence, reflects the forensic state laboratory control number assigned when the items were received from the officers, and the inventory control number assigned to the drugs on April 23, 1998 when they were placed in the police evidence room.  The police property inventory control sheet reflecting the movement of the items into and out of the police evidence room was admitted into evidence.

Regarding the drugs seized on May 5, 1998, testimony at trial established that on that date Sergeant Jones packaged and sealed the drugs and placed them in a secure evidence locker. It was taken to the police headquarters' evidence room by Detective Thomas and secured there.  The property room officer assigned an inventory control number to the drugs.  The drugs remained secured in the evidence room until May 6, 1998, when Detective Thomas and Officer Lauter transported the drugs to the state forensics laboratory for testing.  When the state forensics laboratory received the items, a laboratory control number was assigned to the drugs.  The drugs remained at the forensics laboratory until June 25, 1998 when they were returned to the Petersburg Police Department and secured in the police headquarters' evidence room.  The certificate of analysis, dated

May 22, 1998 and admitted into evidence, reflects the assigned forensic state laboratory control number and the inventory control number that was assigned to the drugs on May 5, 1998 when they were first placed in the police evidence room. The police property inventory control sheet reflecting the movement into and out of the police evidence room was admitted into evidence.

The record indicates the Commonwealth sufficiently established the requisite chain of custody of the drugs and demonstrates with reasonable certainty that the drugs analyzed by the state forensics lab were the same drugs seized from Gillard. See Washington, 228 Va. at 550, 323 S.E.2d at 587. The trial court did not err in admitting the certificates of analysis for the controlled substances.

### D.  ABUSE OF DISCRETION

We next consider whether the trial court abused its discretion in not allowing Sergeant Jones to testify regarding his observations and knowledge of the procedures for checking evidence into and out of the police property room. "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." James, 18 Va. App. at 753, 446 S.E.2d at 904.

"Questions as to the competency or admissibility of testimony . . . are referred to the decision of the judge. As

- 20 -

it is the province of the jury to consider what degree of credit ought to be given to evidence, so it is for the court alone to determine whether a witness is competent, or the evidence admissible." Mullins v. Commonwealth, 113 Va. 787, 791, 75 S.E. 193, 195 (1912). "A witness is competent to testify . . . if he 'possesses the capacity to observe, recollect, communicate events, and intelligently frame answers to the questions asked of him or her with a consciousness of a duty to speak the truth.'" Jones v. Commonwealth, 32 Va. App. 30, 44, 526 S.E.2d 281, 287-88 (2000) (quoting Greenway v. Commonwealth, 254 Va. 147, 153, 487 S.E.2d 224, 227 (1997)).

Officer Thomas Lauter testified that he was the forensic and evidence supervisor for the Petersburg Police Department at the time the items at issue in this case were received, removed for testing by the forensic laboratory, and returned from the laboratory. He testified as to the handling of the property within the evidence room, including assignment of control numbers and movement of the property to and from the state forensics laboratory.

In the Commonwealth's case-in-chief, Sergeant Jones was called to testify as to actions he had taken in handling the evidence he had seized from Gillard during the early morning of May 5, 1998. Gillard later recalled Sergeant Jones as a defense witness. In his examination of Sergeant Jones as a defense witness, Gillard repeatedly asked if Sergeant Jones was familiar

with the internal procedures of the Petersburg Police Department evidence room, ostensibly to impeach the testimony of Officer Lauter, the forensic and evidence room supervisor who testified about those procedures. Sergeant Jones testified that he was familiar only with the procedure used by officers to place items into the evidence room when they had seized evidence.

Sergeant Jones repeatedly testified that he was not familiar with the internal procedures of the evidence room. When the trial court ruled that Sergeant Jones was not a competent witness to testify as to the internal procedures, Gillard sought to proffer what Sergeant Jones might have testified relating to the internal procedures and what Sergeant Jones may have observed concerning these procedures. Gillard told the trial court he wanted "to make a record. I have to proffer what <u>would possibly come out</u>." (Emphasis added).

Prior to terminating Gillard's examination of Sergeant Jones as a defense witness, Gillard was permitted wide latitude in questioning the witness as to what he had observed generally, as to submitting evidence to the evidence room, removing it to take it to the state forensics laboratory, and the experience he had when the evidence was taken to the laboratory. When Gillard sought to "proffer" evidence for the record, he told the trial court he could only proffer "what would possibly come out," a matter of speculation. Moreover, the attempted proffer was not tied to any specific question propounded to the witness.

- 22 -

Gillard did not offer to the court the relevancy or materiality of the evidence he sought to present to the trial court. The trial court correctly terminated further examination of the witness and properly refused to permit a proffer when Gillard could only speculate what the testimony might be.

With no capacity to observe, recollect, communicate events, and intelligently frame answers to questions about the internal procedures of the property room, Sergeant Jones was not a competent witness to testify regarding those procedures. See Jones, 32 Va. App. at 44, 526 S.E.2d at 287-88. Moreover, Gillard's attempt to proffer Sergeant Jones' testimony was improper. See generally Wyche v. Commonwealth, 218 Va. 839, 842-43, 241 S.E.2d 772, 774-75 (1978); Lowery v. Commonwealth, 9 Va. App. 304, 307-08, 387 S.E.2d 508, 510 (1990). We hold that under these circumstances, the trial court did not abuse its discretion in terminating the examination of Sergeant Jones and in refusing to permit Gillard to proffer speculative testimony.

### E. NOVEMBER 16, 1998: FAILURE TO APPEAR

Lastly, we consider whether the evidence was sufficient to support Gillard's conviction for failure to appear on November 16, 1998.

> When the sufficiency of the evidence is challenged on appeal, it is well established that we must view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The conviction will be

- 23 -

> disturbed only if plainly wrong or without
> evidence to support it.

Jones, 13 Va. App. at 572, 414 S.E.2d at 196.

On November 16, 1998, Gillard was scheduled to appear in the Petersburg General District Court for a preliminary hearing related to his April 22, 1998 offense of possession of cocaine with the intent to distribute.  The record reflects that Gillard received notice to appear in court on November 16, 1998.  However, he failed to appear at the hearing.  As a result, the trial judge noted the failure to appear on the April 22, 1998 warrant for arrest.  In addition, on November 16, 1998, the trial judge ordered Gillard's bond be revoked and that an arrest warrant be issued for his failure to appear.

In order to convict Gillard of failure to appear, the Commonwealth must first show that Gillard had notice that he was required to be present in court on the given date and that he did not appear in court on the scheduled court date.  The Commonwealth relies on the court records as evidence of Gillard's failure to appear.  Code § 8.01-389(A) provides that "[t]he records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified by the clerk of the court where preserved to be a true record."  "[T]he terms 'authenticated' and 'certified' are basically synonymous" in this context.

<u>Owens v. Commonwealth</u>, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990).

The trial court properly admitted into evidence the deputy clerk's testimony regarding the April 22, 1998 warrant of arrest. The warrant of arrest reflects the district court judge's finding that Gillard failed to appear and the judge's order that Gillard's bond be revoked and that an arrest warrant for failure to appear be issued. At trial, Ms. Simmons, deputy clerk for the Petersburg General District Court, authenticated the April 22, 1998 warrant for arrest. She testified that it showed on its face Gillard failed to appear in court for a preliminary hearing scheduled on November 16, 1998 and that a warrant for Gillard's arrest was issued on that same day, pursuant to the trial judge's order. She stated that she recognized both the trial judge's handwriting and her own handwriting on the warrant. The April 22, 1998 warrant for arrest was authenticated by the deputy clerk, and her testimony as to its content was therefore admissible as <u>prima</u> <u>facie</u> evidence of Gillard's failure to appear.

With evidence of Gillard's failure to appear in court on November 16, 1998, the Commonwealth was required to prove that he had knowledge of the trial date. Knowledge of the trial date, which includes dates to which the trial has been continued, can be inferred from proof the trial date was set in orders entered into the public record. <u>Hunter v. Commonwealth</u>,

- 25 -

15 Va. App. 717, 722, 427 S.E.2d 197, 200-01 (1993).  Here, the court records, including the April 22, 1998 warrant for arrest, reflect that Gillard was recognized to appear in court on November 16, 1998 as a condition of his bond.  Thus, Gillard had notice of his court date.  Moreover, Gillard did not contest that he had notice to appear in court on November 16, 1998.  He asserted only that the evidence failed to prove he was not in court on that date.

With failure to appear and knowledge of the court date proven, the Commonwealth was required additionally to prove that Gillard willfully failed to appear.  "'Any failure to appear after notice of the appearance date [is] prima facie evidence that such failure to appear [was] willful.'"  Id. at 721, 427 S.E.2d at 200 (quoting Trice v. United States, 525 A.2d 176, 179 (D.C. 1987)).  The Commonwealth, therefore, successfully carried its burden of proving Gillard's failure to appear beyond a reasonable doubt.

With the Commonwealth successfully carrying its burden, the burden of going forward with the evidence shifted to Gillard to show why his absence was not willful.  No cause was shown.  Therefore, the evidence was sufficient to sustain Gillard's conviction for failure to appear.

### III.  CONCLUSION

In summary, we find that (1) the evidence was sufficient to support Gillard's convictions for possession of a controlled

substance, possession of a gun while in possession of a controlled substance, possession of a concealed weapon, and possession of marijuana on April 22, 1998; (2) the trial court did not err in admitting evidence of possession of cocaine and possession of a gun while in possession of cocaine relating to Gillard's May 5, 1998 offenses; (3) the Commonwealth sufficiently established the chain of custody of the drugs seized from Gillard on April 22 and May 5, 1998 and that the trial court did not err in admitting the certificates of analysis for the controlled substances; (4) the trial court did not abuse its discretion in preventing Sergeant Jones from testifying about the internal procedures for checking evidence into and out of the police property room; and (5) the evidence was sufficient to convict Gillard for failure to appear on November 16, 1998.

The judgment of the trial court is affirmed.

<u>Affirmed.</u>